61 So.2d 101.

**WILLIAMS et al. v. JONES et al.**

**6 Div. 313.**

Supreme Court of Alabama.

Oct. 23, 1952.

60

Ingram Beasley, Birmingham, for appellant.

Geo. Trawick, Birmingham, for appellees.

LAWSON, Justice.

This litigation grows out of a dispute in a colored Baptist church in Jefferson County, known as the Twenty-Second Avenue Baptist Church.

Before treating of the question at hand, we think it wise to refer to certain general principles established by our cases dealing with church matters. ·

■ It is firmly established that courts decline to assume any jurisdiction as regards the purely ecclesiastical or spiritual feature of the church. Hundley v. Collins, 131 Ala. 234, 32 So. 575; Gewin v. Mt. Pilgrim Baptist Church, 166 Ala. 345, 51 So. 947; Mount Olive Primitive Baptist Church v. Patrick, 252 Ala. 672, 42 So.2d 617, 20 A.L.R.2d 417.

On the other hand, in many cases we have recognized the right and duty of civil courts to exercise jurisdiction to protect the temporalities of the church, such as where civil rights or rights of property are involved. Christian Church v. Sommer, 149 Ala. 145, 43 So. 8, 8 L.R.A.,N.S., 1031; Gewin v. Mt. Pilgrim Baptist Church, supra; Barton v. Fitzpatrick, 187 Ala. 273, 65 So. 390; Morgan v. Gabard, 176 Ala. 568, 58 So. 902; Manning v. Yeager, 201 Ala. 599, 79 So. 19; Tucker v. Denson, 202 Ala. 308, 80 So. 373; Manning v. Yeager, 203 Ala. 185, 82 So. 435; Blount v. Sixteenth St. Baptist Church, 206 Ala. 423, 90 So. 602; Mitchell v. Church of Christ, 219 Ala. 322, 122 So. 341; Id., 221 Ala. 315, 128 So. 781, 70 A.L.R. 71; Guin v. Johnson, 230 Ala. 427, 161 So. 810; Bailey v. Washington, 236 Ala. 674, 185 So. 172; Caples v. Nazareth Church of Hopewell Ass'n, 245 Ala. 656, 18 So.2d 383; Odoms v. Woodall, 246 Ala. 427, 20 So.2d 849.

■ Wherever there is an incorporated church, there are two entities, the one the church as such, not owing its ecclesiastical or spiritual existence to the civil law, and the legal corporation, each separate though closely allied. The spiritual entity of a church made up of members belonging to it, existing without any special law to that effect, is a different and distinct body in the contemplation of the law from the same body when incorporated under statutes for the purpose—the two having different functions to perform, the one religious and the other civil. Under our statutes for the incorporation of churches, it is to be noted that the members of the church become incorporated, and not simply the trustees required to be elected preparatory to proceeding in the court of probate to obtain incorporation. Each member is an incorporator, recognized as a legal civil body, distinct from the church as a spiritual body, theretofore and thereafter continuously existing. §§ 124, 125, Title 10, Code 1940; Hundley v. Collins, supra; Dismukes v. State, 176 Ala. 616, 58 So. 195; Blount v. Sixteenth St. Baptist Church, supra.

■ It is, of course, recognized that a court of equity upon proper showing will enjoin strangers from interfering with the rightful use and possession of church property. Christian Church v. Sommer, supra; Ashworth v. Brown, 240 Ala. 164, 198 So. 135; Davis v. Ross, 255 Ala. 668, 53 So.2d 544.

In Harris v. Cosby, 173 Ala. 81, 55 So. 231, it is pointed out that courts, following the United States Supreme Court in Watson v. Jones, 13 Wall. 679, 20 L.Ed. 666, have divided the questions which have come before them in regard to rights of property held by ecclesiastical bodies into three groups or categories.

First, where the property, by the express terms of the deed or will, is devoted to the teaching of some specific form of religious doctrine. As in all instances involving special trusts, the court will see that the property is not divested from the special purposes for which it has been conveyed.

Second, where the property is held by a religious congregation, which, by the power of its organization, is strictly independent of other ecclesiastical associations, and, so far as church government is concerned, owes no fealty to any higher authority. As

to this type of religious congregation, if the principle of government be that the majority rules, then, generally speaking the majority of the members have the right to control the property. However, there is an exception to the general rule that the majority has the right to control the property. We will treat with the exception in detail later in this opinion.

Third, in instances where the property has been acquired for the general use of a religious congregation which is itself a part of a large and general organization of some religious denomination, with which it is more or less intimately connected by religious views and ecclesiastical government, the courts are bound to look at the fact that the local congregation is itself but a member of a much larger and more important religious organization, and is under its government and control, and is bound by the orders and judgments of the ecclesiastical courts where they have jurisdiction.

We are concerned in this appeal with those cases which deal with the second group, for we have had occasion in several cases to state, as from the temporal viewpoints, the nature of the constitution and government of Baptist churches. We will repeat to this extent: Each Baptist church is within itself a pure democracy; it is the right of the majority to rule; the will of the majority having been expressed, it becomes the minority to submit; church action is final. Gewin v. Mt. Pilgrim Baptist Church, supra; Barton v. Fitzpatrick, supra; Manning v. Yeager, 201 Ala. 599, 79 So. 19; Tucker v. Denson, supra; Manning v. Yeager, 203 Ala. 185, 82 So. 435; Blount v. Sixteenth St. Baptist Church, supra; Guin v. Johnson, supra; Skyline Missionary Baptist Church v. Davis, 245 Ala. 455, 17 So.2d 533; Caples v. Nazareth Church of Hopewell Ass'n, supra; Mt. Olive Primitive Baptist Church v. Patrick, supra.

■■■■ So in a Baptist church, as a general rule, the majority of the members of the church have the right to control the property of the church. But as before noted, there is an exception to this rule. The exception is that, as against a faithful minority, a majority of the members of the

church may not divert the property of the church to another denomination, or to the support of doctrines radically and fundamentally opposed to the characteristic doctrine of the church, even though the property is not subject to an express trust. The civil courts may be resorted to in order to prevent such a diversion. Manning v. Yeager, 201 Ala. 599, 79 So. 19; Id., 203 Ala. 185, 82 So. 435; Mitchell v. Church of Christ, 221 Ala. 315, 128 So. 781, 70 A.L.R. 71; Guin v. Johnson, supra; Caples v. Nazareth Church, supra; Holt v. Scott, 252 Ala. 579, 42 So.2d 258. But to justify court interference it must be shown that the purpose of the majority is to make a gratuitous transfer of the property to another denomination, or to disavow and depart from the characteristic, distinctive doctrines and practices, and devote the use of the property to doctrines radically opposed to the distinctive doctrines and practices of the society. Such purpose must appear either from an open avowal on the part of the majority, or from its acts and conduct manifesting such purpose beyond all reasonable doubt. Mitchell v. Church of Christ, 221 Ala. 315, 128 So. 781, 70 A. L.R. 71. It is not enough that a schism or division has developed among the members on account of differences of opinion in the interpretation and application of the declared doctrines and practices of the society; such matters must be settled by the society for itself in its own way. Mitchell v. Church of Christ, 221 Ala. 315, 128 So. 781, 70 A.L.R. 71; Guin v. Johnson, supra; Bailey v. Washington, supra; Skyline Missionary Baptist Church v. Davis, supra; Mt. Olive Primitive Baptist Church v. Patrick, supra; Davis v. Ross, supra.

We have discussed above the rule of our cases where a minority group of a church governed as is a Baptist church invokes the jurisdiction of the civil courts to prevent a diversion of church property.

We will refer hereafter to other instances where the civil courts of this state have taken jurisdiction of disputes between factions of Baptist churches or of churches similarly governed on the ground that property or civil rights were involved.

For the reason that the majority of the members of a Baptist church have the right to control the property, no question of diversion as heretofore discussed being involved, we have held that a bill for injunction had equity which was filed by a majority of the members of the church against a minority group, which group the bill alleged unlawfully excluded the complainants from the church property, threatened them with violence, and which expressly averred that complainants did not seek to invoke the jurisdiction of the court as to any purely religious or ecclesiastical controversies, but merely that they be protected in their property rights in and to the church property. Manning v. Yeager, 201 Ala. 599, 79 So. 19. That the bill sought relief on the grounds above delineated, as well as on the ground of diversion, is clearly shown in the opinion of this court written on the second appeal, 203 Ala. 185, 82 So. 435, where it is said:

"* * * Complainants ask to be placed in possession and control of the church property on two grounds: (1) That defendants have wrongfully excluded them, and (2) that defendants by their departure from the faith and practice of the true Missionary Baptist church have forfeited all right to the possession and control of the church property, even though they constitute a majority of the congregation."

In holding that complainants could have no relief on the first ground, we said:

"We find from the evidence noted in the record that before, at, and after the division in the church, defendants constituted a majority of the membership. * * *"

In Guin v. Johnson, supra, 230 Ala. 427, 428, 161 So. 810, we said in part:

"The bill involves the possession and use of the church building and grounds, as between contending factions.

"Complainants seek to enjoin respondents from the continued use and enjoyment of same, and their interference with complainants' use of same for religious services.

"The bill proceeds on two theories:

"First, it is alleged that the minority group or faction of the church, congregational in type, has usurped control of the property, undertaken to exclude complainants from the church, and denied their right to hold services, etc.

"This feature of the bill is not sustained by the *proof*." (Emphasis supplied.)

In Barton v. Fitzpatrick, supra, there was a division of the members of the Peace Baptist Church over the pastor, Fitzpatrick. Barton had been the pastor prior to the coming of Fitzpatrick. A number of the members of the church wanted to be rid of Fitzpatrick and finally one of their number arose in a meeting, held for worship, and gave notice that there would be a meeting of the congregation on a day named for the purpose of declaring the pastorate vacant and electing a successor to Fitzpatrick. This call did not have the approval of the pastor or a majority of the board of deacons, nor was the question whether such meeting should be called for the designated purpose put to the congregation then assembled for decision. Fitzpatrick, who was in the pulpit at the time, stated in effect that the notice amounted to nothing. A meeting was, however, held pursuant to the notice, with result that resolutions were unanimously adopted purporting to oust Fitzpatrick and to elect Barton as his successor *pro tempore*. Deacons were also elected to replace those who adhered to Fitzpatrick. Barton and his faction took possession of the property. At a later meeting they elected Barton pastor for an indefinite term. Fitzpatrick's faction ignored these meetings and took no part in them. Thereafter Fitzpatrick and his adherents filed a bill against Barton and his followers, which had for its purpose the securing of a legal determination of the right to the possession and control of the church property, and other relief. The trial court on final hearing ruled in favor of the Fitzpatrick group. We affirmed on the ground that the meeting wherein Barton and his deacons were purportedly elected had not been properly called and Barton's deacons had no title to the church property.

In Blount v. Sixteenth Street Baptist Church, supra, 206 Ala. 424, 90 So. 602, we said, in part, as follows:

"The bill by the Sixteenth Street Baptist Church, a corporation, was against certain of its members and one other not a member, and prayed injunction to prevent them or their servants, attorneys, and agents from interfering with the pastor and other named officers of the church in conducting and providing for the services held, from interfering in the use and occupation of the church and control thereof by its board of deacons, from interfering with said board and the appointment of and invitation to ministers to fill said pulpit, and from interfering with said named officers in the control of the church finances and the custody thereof.

"Objections to the bill, on the ground that injunctive relief may not be had to prevent a violation of the criminal law of the state, are inapt where the primary purpose is that complainant's right to operate and enjoy its properties as a church and by its congregation is so interfered with as to amount to an impairment of its right of property, or that to comply with or submit to the insistence of respondents would amount to an invasion and destruction of the property rights of complainants. (Authorities cited.)"

It is to be noted, however, that we reversed the action of the trial court in overruling pleas in abatement for the reason that the proof showed lack of authority to bring the suit. In that connection it was said: "This authority by the majority, present and voting at a meeting of that church of which due notice had been given, etc., was necessary to subject the Sixteenth Street Baptist Church to the liability of the suit for injunction."

In Gewin v. Mt. Pilgrim Baptist Church, supra, we dealt with the question as to which of two factions stood for the true Mt. Pilgrim Church and, therefore, had title to the church property and the right of possession. The factions were not divided on any question of religious doctrine or denominational practice. They seemed to have been more intent upon the use of a name and evidently attached importance to the possession of the property of the church. It was observed in that case, 166 Ala. at page 349, 51 So. at page 948:

"* * * It must be conceded that the courts have no power to revise ordinary acts of church discipline or pass upon controverted rights of membership. Hundley v. Collins, 131 Ala. 234, 32 So. 575, 90 Am.St.Rep. 33. But such considerations are attended to when they form the basis upon which civil rights and rights of property depend. While the courts cannot decide who ought to be members, they may inquire whether any disputed act of the church affecting property rights was the act of the church, or of persons having no authority. Bouldin v. Alexander, 15 Wall. 131, 21 L.Ed. 69. * * *"

The complainants are nineteen individuals who describe themselves as being members and officers of the Twenty-Second Avenue Baptist Church; yet it appears from the averments of the bill that the pastor, C. H. Williams, purported to terminate their connections with the church. Complainants do not aver that they constitute a majority of the membership, but do aver that they belong to the majority faction. The individual respondents are the pastor, C. H. Williams, and seventeen other persons who are described as being members of the minority faction, some of whom it is alleged are acting members of the board of deacons. In the original bill filed on May 31, 1948, the Twenty-Second Avenue Baptist Church, a corporation, was made a party respondent. By an amendment filed on August 30, 1948, it is made to appear that complainants are in doubt as to whether the church was at the time the bill and the amendment thereto were filed a corporation and, if so, its correct corporate name. The following were added by the amendment as parties respondent: Twenty-Second Avenue Baptist Church, a voluntary congregation of religious worshipers; Twenty-Third Avenue Colored Baptist Church, a corporation;

and Twenty-Third Avenue Baptist Church, a corporation. It is alleged that the confusion in the name and status of the church results from acts of certain of the respondents, which acts the amendment to the bill details, but which need not be set out here.

According to the averments of the bill, the membership of the church is divided over the pastor, Williams. The complainants want him deposed. The individual respondents are loyal to him. Williams came to the church for an indefinite period in January 1947. During the following month, February 1947, a majority of the board of deacons took steps to submit to the church membership the matter of declaring the pastorate vacant. Some of the complainants were among those recommending such action.

It was following this action of a majority of the board of deacons that the pastor, Williams, purported to terminate the membership of the complainants in the church and to remove certain of them from the church offices which they held. This action, it is alleged, was arbitrary, illegal and unauthorized, inasmuch as it was contrary to the law of the church and its long accepted and established customs, rules and regulations; it was not taken at a regularly assembled and warned meeting of the church membership; no charges were preferred against complainants nor were they given any notice or opportunity to be heard.

Over the protest of the pastor, a majority of the members of the church present at a regular church service voted to have a warned meeting of the church membership to determine whether or not the church membership would set aside or ratify the purported disqualification of complainants as members and officers of the church. As a result of this action, several of the complainants were arrested on a warrant sworn out by one of the respondents.

On the day and at the time set for the said warned meeting, the complainants and a large number of other members of the church assembled at the church but were unable to use the church house, as its doors were locked. The meeting was held in front of the church and a resolution was unanimously adopted by the members present declaring that complainants were duly qualified, acting and elected members and officers of the church, thereby nullifying any action purporting to disqualify them as such.

It is alleged that the interest in the church house, parsonage and equipment therein is in the members of the church, but that acts of violence have occurred and will occur in the future if complainants seek to lawfully use the church property as members of the church for customary church business, inasmuch as the respondents, over the protest of the complainants and the majority of the members of the church, have unlawfully taken possession of the church property to the exclusion of the complainants, thereby depriving complainants of their property rights.

It is also averred that unless restrained, respondents, without following the rules governing the church, will drop members from the church rolls or unlawfully declare them ineligible as members to vote, all for the purpose of usurping the control of the church property.

A large majority of the members of the church, according to the averments of the bill, desire to hold a warned meeting of the church membership in the church house for the purpose of voting upon the question of whether the respondent, C. H. Williams, shall be retained as pastor, but they cannot use the church property for this legitimate purpose because of the unlawful interference of the individual respondents.

The prayer was for temporary injunction restraining the individual respondents (1) from interfering with the complainants in the use of the church property by locking the doors, by violence or threats, by having complainants arrested on spurious or false charges; (2) from interfering with the peaceable and regularly conducted meetings and elections held in accordance with the rules and regulations governing the church; (3) from attempting to disqualify complainants except as provided by the rules and regulations of the church; (4) from dissolving or attempting to dissolve the corporate charter of the church except

as provided by law; (5) from disposing of the church property. It was also prayed that such injunction be made perpetual on final hearing. The bill further prayed that on final hearing the court decree: (1) That a warned meeting of the members of the church be held to vote on the question of whether the pastorate of the respondent C. H. Williams shall be terminated; (2) that the beneficial interest in the real estate is in the members of the congregation known as Twenty-Second Avenue Baptist Church; (3) the name of the congregation; (4) whether or not the congregation sometimes called "Twenty-Second Avenue Baptist Church" is incorporated, and if so, its corporate name; (5) in what corporation, if any, the legal title to said church is now vested.

Upon the filing of the amendment to the original bill on August 30, 1948, a temporary injunction was ordered issued restraining the individual respondents in the following respects:

"From unlawfully denying or interfering with the complainants and each of them in attending regularly authorized meetings in said church by locking the doors or otherwise.

"From depriving the complainants of the use of said church property by acts of violence, threats, or having them arrested on spurious or false charges.

"From disposing or attempting to dispose of the church property except as provided by the charter of the church corporation, and in accordance with the rules and regulations of said church."

While this temporary injunction was in force and effect, and on September 18, 1948, the following written agreement was filed in the cause:

"Comes now the Complainants by their Attorney of Record, George E. Trawick, and comes the Respondents by their Attorney of Record, Ingram Beasley, and in open Court do hereby stipulate and agree as follows:

"It is agreed between all parties in this cause that an election by the membership of the Twenty-Second Avenue Baptist Church shall be held under the supervision and direction of this Honorable Court at such time and place as the Court may determine and by such party as the Court may select to act as Special Master to determine the question of whether or not C. H. Williams, the present pastor of said church, shall be retained as the pastor of the said church or whether his services as such pastor shall be terminated by said election. That said Special Master shall have authority and power to determine, according to the rules and regulations and the records of said Church, qualifications of all members to participate in said election and that only qualified members of said church as of April 1, 1948, shall be permitted to vote.

"It is further understood and agreed between the parties that all of the parties hereto shall be bound by the result of said election and this cause be decided and determined thereby.

"It is further understood and agreed between the parties that a meeting announced in said church building for Monday, September 20, 1948 at 7:30 P.M. is hereby, by agreement by and between Counsel, called off and cancelled, said meeting having been called for the purpose of voting upon the question to be determined by this agreement.

"It is further understood and agreed by the parties hereto that they do each request the Court to make and enter any and all appropriate orders or decrees to enforce the results of said election.

"In Witness Whereof, we have hereunto set our hands and seals on this the 18th day of September, 1948, and filed in open Court.

"George E. Trawick
Solicitor for Complainants
"Ingram Beasley
Solicitor for Respondents"

Thereafter the trial court, in accordance with the agreement, appointed a special

master, authorizing him to hold the election and to determine who were entitled to vote. The trial court prescribed the yardstick for determining the question of membership.

The Special Master, an able and respected member of the Jefferson County Bar, proceeded to act under the decree of reference. An election was held under his supervision.

On December 9, 1948, the Special Master reported the result of the election to the trial court. The vote was 219 in favor of retaining Williams and 127 against. The Special Master also turned over to the trial court what is termed his "Narrative Report" wherein is set out a detailed history of the church, its method of operation and the dissension which had grown up among its members. Among other things, the special master suggested that the court recommend to the church and its officers to accept certain "disfellowshipped members" back into the church.

On January 12, 1951, the trial court rendered the following decree:

"This cause coming on to be heard was submitted to the Court for a final decree upon the pleadings and proof as noted by the Register and upon consideration thereof, the Court is of the opinion that the Complainants are entitled to the relief prayed for in their bill of complaint. It is therefore,

"Ordered, adjudged and decreed by the Court as follows:

"1. That the Complainants be and they are hereby entitled to the relief prayed as heretofore outlined and delineated by the report of the Special Master heretofore filed in writing in this cause under authority conferred upon him by decree of this Court of December 9, 1948, and the findings, determinations and recommendations contained in said report of the Special Master are hereby in all things ratified and confirmed and made a part of this decree.

"2. That the costs accrued herein be and they are hereby taxed against the respondents named in the answer to the bill of complaint as last amended, separately and severally, for which let execution issue as provided by law."

From that decree the respondents have appealed to this court. They complain of the decree on the ground that it is vague, indefinite and uncertain and on the further ground that all of the costs were taxed against the respondents.

We are forced to agree with the respondents below, appellants here, that the language in which the decree is framed, when considered in connection with the prayer of the bill, renders it uncertain as to the effect of the decree.

But it is not for that reason alone that we feel constrained to reverse the decree of the trial court.

The complainants seem to have abandoned the theory of the amended bill. By the execution of the agreement, all parties seem to have asked the court to assume control of the conduct of the internal affairs of the church and to hold an election to determine whether Williams should be retained as pastor, after first determining who were members of the church qualified to participate in the election.

So the litigation changed from an effort to have alleged wrongs redressed to a situation where a court of equity, through its Special Master, actually takes over and runs the church affairs.

We have been unable to find any authority which even remotely tends to uphold the jurisdiction of the civil courts in a matter of this kind. Of course, parties cannot by mere agreement confer jurisdiction.

The decree being based solely on the report of the Special Master, which dealt with matters beyond the jurisdiction of the court, it follows that the decree is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and BROWN and STAKELY, JJ., concur.