**NORTHSIDE BIBLE CHURCH et al.,
Appellants,**

v.

**W. Kenneth GOODSON et al., Appellees.
No. 24421.**

United States Court of Appeals
Fifth Circuit.

Dec. 7, 1967.

The Dumas Act, passed by the Alabama Legislature in 1959,[1] sets forth a right of a sixty-five percent majority group of a local church congregation to "prevent diversion of church property to unintended use." The statute authorizes the local group to determine the existence of a change of social policies within the parent church and to withdraw local church property from the use and control of the parent. Provision is made for a judicial determination of the facts relative to the alleged changes in social policy. The statute purports to protect any local property trusteeship[2] from conversion to uses other than those appropriate to the parent organization's social policies in effect at the time of the creation of the trust.[3]

Trinity Methodist Church was organized in Mobile County, Alabama, sometime prior to 1953. In April of 1953, local land was conveyed to "Morris Keith, Robert Orem, and Mrs. Emma Walters, Trustees of the Trinity Methodist Church, an unincorporated Church, and The Methodist Church." The deed provided that the property was conveyed to said grantees, their successors in office and assigns, " * * * in trust for the use and benefit of said Trinity Methodist Church," and further

" * * * that said premises shall be used, kept and maintained as a place of divine worship of The Methodist ministry and members of The Methodist Church; subject to the Discipline, usage and ministerial appointments of said church as from time to time authorized and declared by the General Conference and by the Annual Conference within whose bounds the said premises are situated. This provision is solely for the benefit of

Pierre Pelham, Mobile, Ala., for appellants.

Albert W. Copeland, Montgomery, Ala., Harry H. Riddick, Mobile, Ala., Alto V. Lee, III, Dothan, Ala., for appellees, Hamilton, Denniston, Butler & Riddick, Mobile, Ala., Lee & McInish, Dothan, Ala., Hobbs, Copeland, Franco, Riggs & Screws, Montgomery, Ala., of counsel.

Before RIVES, GOLDBERG and AINSWORTH, Circuit Judges.

RIVES, Circuit Judge:

This appeal presents the question of the constitutionality of an Alabama statute which would authorize a majority of a local church organization to withdraw local church property from the use and control of the parent church organization. The court below, in an able opinion, held the statute unconstitutional on the ground that it was contrary to the First and Fourteenth Amendments to the Constitution.

---

1. Code of Alabama, Tit. 58, §§ 104–113.

2. Sec. 104(e) sets forth the type trust clause with which the statute is concerned:

"In trust, that said premises shall be used, kept and maintained as a place of divine worship of the parent church, or as a place of residence for the use and

occupancy of ministers of the parent church, subject to the discipline, usage and ministerial appointments of said church as from time to time authorized and declared by the law-making bodies of the parent church."

3. Code of Alabama, Tit. 58, § 105.

the grantee, and the grantors reserve no rights or interest in said premises except as are expressly reserved by the provisions of this deed."

This trust clause conforms to the practice and custom established by the Discipline of The Methodist Church.[4]

In June of 1965, more than a sixty-five percent majority of Trinity Methodist Church declared themselves in disagreement with existing social policies of The Methodist Church. Declaring that these policies had changed since the time of the execution of their local property deed of trust,[5] this majority announced themselves separate from The Methodist Church. They incorporated as the Northside Bible Church and retained possession of the local church property, claiming to own title to that property. As required by the Dumas Act, the withdrawing group gave notice to the parent organization, The Methodist Church. There is no showing that an evidentiary hearing was held in a state court, as allowed by the Act.

In November 1965, suit against the withdrawing group was brought in the United States District Court for the Southern District of Alabama by W. Kenneth Goodson, Presiding Bishop of the Alabama-West Florida Conference of The Methodist Church, joined by Powers McLeod, District Superintendent of the Mobile District of that Conference, and the Board of Trustees of the Alabama-West Florida Conference. These plaintiffs asserted status individually and as representatives of the membership of The Methodist Church; they asked the court to declare the Dumas Act unconstitutional and to enjoin defendants from denying plaintiffs the right to possession of the real estate. It was subsequently stipulated that at no time had defendants complied with the requirements of the laws of The Methodist Church as they would apply to such a situation.[6]

Defendants' answer denied the claim of The Methodist Church to the property. They made several motions to stay the proceedings in the court below, on the ground that plaintiffs had already begun a similar action in a state court against another withdrawing group, wherein the issues were the same as in this action. Defendants argued that the pendency of the state suit should cause the federal court to stay its proceedings until the state court determined the matters of interpretation, application and constitutionality of the Dumas Act. These motions to stay were all denied.[7]

Originally, a three-judge court was convened in this case. That court dissolved itself on the determination that no injunctive relief was sought against

---

4. The 1964 Discipline suggests the use of the following trust clause:
 "In trust, that said premises shall be used, kept, and maintained as a place of divine worship of the Methodist ministry and members of The Methodist Church; subject to the Discipline, usage, and ministerial appointments of said church as from time to time authorized and declared by the General Conference and by the Annual Conference within whose bounds the said premises are situated. This provision is solely for the benefit of the grantee, and the grantor reserves no right or interest in said premises."

5. Relevant portions of the Discipline of The Methodist Church, from the year 1952 and from the year 1964, were stipulated and made a part of the record by the parties. The 1964 provisions relative to social security, medicare, crim-

inal rehabilitation, and racial discrimination are much more specific and somewhat more liberal than the 1952 version. The 1964 Discipline contained wide-ranging expressions of opinion on foreign policy, world economic development, and immigration.

6. The stipulation, entered into by all parties, declared that various echelons of the church government had jurisdiction over such property disputes and withdrawals. Defendants asserted, however, that the Dumas Act modified such jurisdiction.

7. At the time of the final ruling on these motions to stay, in the district court's opinion of November 29, 1966, the state court litigation was on appeal to the Supreme Court of Alabama from a judgment that the Dumas Act is constitutional. There the case has remained.

an officer of the state, as required for a proceeding under 28 U.S.C. § 2281 et seq.

In its opinion of November 29, 1966, the district court found that if the law of The Methodist Church were applied to the dispute, plaintiffs would be entitled to the local church property. The Dumas Act was held unconstitutional on the ground that it intruded into the internal affairs of The Methodist Church, in violation of the First Amendment. The district court further held that the Dumas Act interfered with beneficial property interests accruing to The Methodist Church through the trust clause, and thus was in violation of the due process clause of the Fourteenth Amendment. Defendants appealed.

 The abstention argument raised as a result of the denial of the motions to stay the federal court proceeding has no real merit. The policy announced by Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, calls for a federal court to avoid settling a constitutional question where a state court may make a determination of a state question dispositive of the case. Application of the *Pullman* doctrine is appropriate where there is a need for state court interpretation of a state statute,[8] or where a state court determination might be dispositive without reaching the constitutional issue.[9] Neither of these considerations is present here. The Alabama statute is plain in its meaning. There appears to be no ground on which a state court disposition could be made without reaching the question of the constitutionality of the Dumas Act.[10] In another First Amendment context, where a complaint questioned the validity of a state statute justifiably attacked on its face as an abridgment of free expression, the abstention doctrine

was held inappropriate. Dombrowski v. Pfister, 1965, 380 U.S. 479, 489–490, 85 S.Ct. 1116, 14 L.Ed.2d 22. Here, where there is no necessity for state court interpretation of a statute clear on its face and where there is no opportunity for the avoidance of the matter of the constitutionality of the statute, the district court clearly was correct in refusing to stay the proceedings.[11]

The First Amendment, through the Fourteenth Amendment, "commands that a state 'shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.'" Everson v. Board of Education, etc., 1947, 330 U.S. 1, 8, 67 S.Ct. 504, 508, 91 L.Ed. 711. See Cantwell v. Connecticut, 1940, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213.

"The 'establishment of religion' clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another * *. Neither a state nor the Federal Government can, openly or secretly, participate in the affairs of any religious organizations or groups and vice versa." 330 U.S. at 15, 67 S.Ct. at 511.

 State and federal courts alike are obliged to uphold the laws and rules of church governing bodies against dissident factions. Watson v. Jones, 1871, 80 U.S. (13 Wall.) 679, 20 L.Ed. 666. Judicial tribunals, as arms of the government, must avoid interference with established church policies and government.

A New York statute was held unconstitutional when it was found to establish a preference for one church administration over another. Kedroff v. St. Nicholas Cathedral etc., 1953, 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120. Such a preference was said to be an intrusion into the internal affairs of the church. On

---

8. 312 U.S. at 499–500, 61 S.Ct. 643, 85 L.Ed. 971.

9. Id. at 501.

10. See n. 7, supra.

11. We are confirmed in this ruling by Zwickler v. Koota, 389 U.S. 241, 88 S. Ct. 391, 19 L.Ed.2d 444, after this opinion was written but two days before it was released.

this point we quote from the court below:

"The Dumas Act operates only on protestant denominations of Christian faith. Pretermitting whether this classification is in and of itself violative of constitutionally equal protection, the court is persuaded that the effect of the Dumas Act is to engraft upon a significant segment of American protestantism a legislative scheme of property ownership in derogation of the ecclesiastical systems evolved by several protestant denominations. For example, in Presbyterian, Episcopalian, and Lutheran churches there are connectional property features similar to those within the Methodist Church. The Dumas Act does not operate on purely congregational churches such as the Southern Baptists. It does, however, create a legislative body of a 65% majority of adult members for local churches within a connectional structure. It grants to this legislative body the right, power and authority to change established systems of church ownership without regard to the ecclesiastical law of the denomination. The warning of Madison becomes fact if the legislature is permitted to write into the ecclesiastical law of connectional denominations a control of local church property by a 65% majority. For what is accomplished by the Dumas Act is a 'particular sect of Christians', at least as applied to protestants, in which local property control is vested in a majority of not more than 65% of the local congregation. The establishment of such a class or sect is constitutionally prohibited."

Defendants have attempted to save the Dumas Act by the argument that it operates merely to give effect to the original intent of the deed of trust. Such intent, it is suggested, is to be inferred from the social policies of The Methodist Church in effect at the time of the creation of the trust. The trust clause itself rebuts this argument, for it clearly anticipated the probability of changing attitudes. The fact that the Dumas Act itself contained an example of just such a trust clause in no way assists the *cypres* argument urged by defendants.[12] A similar argument was rejected in Kedroff v. St. Nicholas Cathedral, etc., 344 U.S. at 119, 73 S.Ct. 143, 97 L.Ed. 120.

Defendants have urged further that the court should recognize that the Dumas Act operates with respect to "social policies" and not ecclesiastical matters. We make no effort to find any distinction between these two categories, if any does exist. It is sufficient to say that "social policies" are not within the range of non-ecclesiastical matters exemplified by such cases as Williams v. Jones, 1952, 258 Ala. 59, 61 So.2d 101, and Hundley v. Collins, 1902, 131 Ala. 234, 32 So. 575.

The organization of The Methodist Church places the Dumas Act, as applied to this particular case, in a particularly untenable position. The Methodist Church operates through a contemporary version of an itinerant ministry. Ministers are assigned and re-assigned from church to church and from time to time. Thus the parent organization, along with its constituent echelons, has a peculiar interest in assuring the availability and cooperation of a local group which it has brought into being. A law such as the Dumas Act brazenly intrudes upon this very basic and traditional practice of The Methodist Church, and supersedes the processes available within the church structure for the settlement of disputes. We hold the Dumas Act, Code of Alabama, Title 58, §§ 104–113, unconstitutional under the First Amendment made applicable to the State by the Fourteenth Amendment.

It is not necessary for us to rule on the contentions that it also denies the equal protection of the law and deprives persons of property without due process of law. The judgment is

Affirmed.

12. See n. 2, supra.