STUART, Justice.
The Clarke Circuit Court dismissed both the claims asserted by St. Union Baptist Church, Inc. (“the corporation”), against Reverend James M. Howard, Sr., and the counterclaims asserted by Howard against the corporation and its directors after concluding that their dispute was ecclesiastical in nature and outside the jurisdiction of the court. We affirm the trial court’s dismissal of the corporation’s claims, but we reverse its dismissal of Howard’s counterclaims.
I.
St. Union Baptist Church (“the church”) has existed in Clarke County for over 100 years.[1] Traditionally, its temporal affairs were administered through a board of deacons, and, in January 1992, five members of that board filed articles of incorporation with the Clarke County Probate Court creating St. Union Baptist Church, Inc., whose purpose was described as follows in those articles of incorporation:
“The purpose for which the corporation is organized is to administer the affairs of the congregation [and] to construct or cause to be constructed such buildings and structures that are necessary for proposed worship and church services, and the corporation shall have the right to buy, sell, hold, mortgage, and encumber real and personal property, to receive property by gift, will, or devise, holding such property in conformity with all lawful conditions imposed by the donor and may exercise such other powers as- are incident to private corporations, exclusively for religious, charitable, scientific, literary and educational purposes.”
The articles of incorporation identified the five incorporating deacons as the initial members of the corporation’s board of directors; it appears that the deacons thereafter continued to oversee the temporal affairs of the church in the same manner as they had before the corporation was formed.[2]
Minutes from an April 18,1995, business meeting of the church indicate that the deacons had decided at that time to hire Howard as the church’s new pastor. It appears that the church thereafter operated with Howard as its pastor for a number of years without conflict; by 2012, however, a rift had formed between Howard and the deacons. At a business meeting on April 28, 2012, Howard purported to “give the deacons back to the church,” which apparently encompassed relieving them of at least some of their duties. Nevertheless, the minutes of that meeting reflect that Howard continued to recognize their involvement in the financial governance of the church, because two deacons presented financial reports and Howard informed the members present that one of the deacons would continue handling the paying of bills. Those minutes also indicate that the deacons immediately expressed their disagreement with Howard’s unilateral deci *806 sion regarding their roles; the deacons again expressed their displeasure in a June 27, 2012, letter sent to Howard in which they requested a private meeting to “settle this matter in a Godly manner.” No such meeting was held, however, and the deacons thereafter called a meeting of church members for August 13, 2012, “so that we may try to settle the on-going differences that have caused division.” At that meeting, the deacons decided to terminate Howard’s pastorate, and, on August 19, 2012, six deacons signed a letter to Howard informing him of that decision, stating:
“The listed deacons called the meeting for the purpose of informing the body of some of their concerns regarding the welfare of the church that need immediate attention. A few of the things that were discussed were the falling off of member attendance, the falling off of tithes and offerings, the incorporation of the church being ignored, your lack of spiritual and financial leadership, the $187,000 [of] steel that is lying in the parking lot, and your holding a grudge against us that has not been revealed to us. Your consistently refusing to meet with the board of deacons has brought us to where we are today.
“After discussing these topics and a few others, there was a motion from the floor for your termination, which was seconded. After putting this to a vote, the majority present voted for your termination. Regretfully, this is to inform you that your services to St. Union as pastor are no longer needed as of Monday, August 13, 2012. We hope you will accept the majority vote and move on pleasantly.”
Howard declined to leave his position, however, and, on October 13, 2012, he held another church meeting at which he asked those present to vote whether they wanted “the pastor to stay” or “for the deacons to remain.” The minutes of that meeting indicate that 37 members voted for Howard and 10 members voted for the deacons.
For approximately two years, it appears that this situation remained at a stalemate, with Howard continuing to serve as pastor and the deacons continuing to perform at least some of them traditional duties. The conflict between them continued, however, and, although the record does not fully explain the circumstances, it appears that the deacons, who continued to administer the church’s finances through the corporation, at some point stopped paying Howard’s salary. On August 26, 2014, a “charge” was prepared declaring that, on October 13, 2012, the deacons had been removed from office and that the church henceforth had no deacons.[3] The charge further declared that “these brothers” nevertheless were continuing to come to church and acting as deacons and disturbing worship services despite the fact that they had “been excluded.” The charge concluded that, “according to the body of the church, on October 13, 2012, ... these brothers were relieved of their office of deacon along with any power to handle any business for or in the name of [the church].” The deacons apparently ignored this charge.
At some point thereafter, Howard told the congregation that he would resign if he was paid the money he was owed; presumably, this claimed money consisted of the salary that had been withheld by the deacons. Howard and the deacons subsequently began negotiations, and, on November 30, 2014, Howard submitted his resignation. On December 1, 2014, Howard executed an agreement with the corporation in which he agreed to resign as pastor of the church in exchange for $16,600. Howard thereafter negotiated a *807 check in that amount issued to him by the corporation.
On December 21, 2014, Howard rescinded his resignation, stating that he was doing so at the request of the members of the church who had, he stated, told him that they would not accept his resignation. Howard did not repay the $16,600 the corporation had paid him to resign, however. The next day, the corporation sent Howard a letter reminding him of the December 1 agreement and advising him that legal action would be taken if he did not honor the agreement. On December 23, 2014, the threatened legal action was commenced when the corporation, acting through the five deacons who were now serving as its officers and directors, sued Howard, alleging breach of contract and trespass and asking the trial court to issue an immediate temporary restraining order barring Howard from the church premises, to be followed by a similar permanent injunction after appropriate proceedings were completed. On December 24, 2014, the trial court entered the requested temporary restraining order barring Howard from the church premises.
Howard thereafter moved the trial court to dissolve the temporary restraining order, asserting that the five deacons purporting to act on behalf of the church in bringing the litigation were not currently leaders or even members of the church, having been expelled in October 2012. He further argued that when those deacons and/or their predecessors had incorporated the corporation through which they continued to control the finances of the church they had never consulted with the congregation or sought its approval.[4] Howard also argued that the temporary restraining order was inappropriate because the corporation had not alleged that any harm would result from Howard attending church services and that, in any event, he had never been banished from the church or agreed to stay away from the church premises. Howard followed his motion to dissolve the temporary restraining order with his own complaint, naming as defendants the corporation and its five directors—Jessie J. Robinson, Asberry Dif-fin, Abraham Kimbell, Jr., James E. Todd, Tommy R. Briggs—and asserting claims of conversion, breach of fiduciary duty, unjust enrichment, breach of contract, re-plevin, and conspiracy and seeking an accounting of church funds from 2005 to the present, a temporary restraining order enjoining the corporation and its directors from expending any church funds, and an order requiring the corporation to turn over all funds held on the church’s behalf to Howard. The corporation and its five directors subsequently moved the trial court to dismiss Howard’s counterclaims, and Howard filed a similar motion asking the trial court to dismiss the complaint that had initiated this action.
On March 20, 2015, the trial court held a hearing on the pending motions, and, on March 23, 2015, the trial court entered an interlocutory order providing for the management of the church until the legal issues were fully resolved. That order provided, among other things, that a representative appointed by the State Baptist Board to which the church belonged would monitor church services each week and would supervise the handling of all offerings; that church finances would “remain under their present structure and control” but that only normal operating expenditures would be made; that How *808 ard and a guest preacher selected by the deacons would preach on alternate weeks; that no party would conduct meetings on church premises other than the scheduled Sunday services; and that all parties and church members would refrain from discussing the litigation, disparaging one another, or soliciting support while on church premises.[5] This order effectively dissolved the temporary restraining order entered against Howard in December 2014 but did not resolve the pending motions to dismiss.
The corporation and its directors thereafter again moved the trial court to dismiss Howard’s counterclaims, supporting their motion with documentary evidence; they also separately moved the trial court to enter an order requiring Howard to return the $16,600 he had received if it was determined that he was allowed to remain as pastor. Howard subsequently also supplemented his previously filed motion to dismiss with documentary evidence. On June 2, 2015, the trial court entered a final judgment dismissing all the claims asserted by the parties based either on their lack of standing or the court’s lack of jurisdiction. The trial court explained its judgment as follows:
“The heart of the dispute and litigation in the present case is whether Howard is or is not the pastor of St. Union Baptist Church. The choice of a pastor for a church is based wholly on Biblical principles for which a court eannot interfere without violating the United States Constitution and the Constitution of the State of Alabama. All cases adjudicated by the Alabama Supreme Court throughout its history have respected this principle. The congregation of St. Union Baptist Church by majority vote (‘pure democracy’ per Blount [v. Sixteenth St. Baptist Church, 206 Ala. 423, 426, 90 So. 602, 604 (1921)]) must choose or terminate its pastor. This court nor the legislature through its business organization statutes nor any church member or minority group of members can alter this principle. The dispute over whether Howard resigned or not and if he did whether he may be rehired as pastor is for the majority of the congregation to decide. Regardless of the various causes of actions and names of the parties, the central, substantive dispute is whether Howard is or is not the pastor and such is wholly spiritual and ecclesiastical in nature and the court cannot interfere.”
On June 9, 2015, the corporation moved the trial court to reconsider its judgment, noting that the Sunday services at the church on June 7, 2015, had been “complete chaos” because Howard and his attorney had declared to the congregation that Howard was “back in charge” of the church and, the corporation asserted, Howard was also attempting to conduct another vote of the congregation to remove the deacons while resisting any attempt to have a vote conducted concerning his own position. The corporation accordingly requested that the trial court enter a finding of fact that Howard had resigned as pastor and appoint a mediator to oversee a fair election to determine the church’s future. On June 11, 2015, the trial court denied that motion, again noting that the choice of a pastor was a spiritual matter beyond the jurisdiction of the court.
Subsequently, on June 29, 2015, Howard moved the trial court to modify its judgment. Howard’s motion also described a chaotic atmosphere at the June 7, 2015, services of the church and further stated that, on Sunday, June 14, 2015, church members had arrived at the church to *809 discover that the deacons had changed the locks and posted notices stating that there would be no church services until further notice and that any trespassers would be prosecuted. An altercation had occurred in which two church members suffered knife wounds, police were called, and criminal-trespassing warnings were issued to Howard and his wife. Howard further informed the court that the police had taken the position that the corporation .controlled the church premises and could control access to those premises however it wished to do so; accordingly, Howard asked the court to clarify that the corporation had no legal right to bar him from the church premises.[6] Howard also asked the trial court to reconsider the dismissal of the counterclaims he had asserted against the corporation and its directors, arguing that those claims did not involve ecclesiastical or spiritual matters but concerned the financial affairs and property rights of the church.
On July 13, 2015, the corporation filed its notice of appeal to this Court, docketed as appeal no. 1141132, challenging the trial court’s June 2 order dismissing the corporation’s claims; however, because Howard’s postjudgment motion was still pending in the triai court, that notice of appeal was held in abeyance pursuant to Rule 4(a)(5), Ala. RApp. P. Howard thereafter filed an amended complaint, noting that he had, on July 11, 2015, presided over a conference of church members held outside the church building at which, he claimed, the members had unanimously voted to disassociate the church from the corporation, to expel the five directors of that corporation from the church, to elect three new deacons, and to empower Howard to take whatever action was necessary through the court system to restore the church to its members. He accordingly moved the trial court to enter an order barring the five directors of the corporation from church premises and requiring them to deliver to him all financial records of the church. He further asked the trial court to advise the police and other local government officials that the corporation did not control the church and that only he was authorized to act on behalf of the church.
On July 28, 2015, the trial court entered an order denying Howard’s motion to modify the June 2 judgment but setting forth temporary guidelines to govern the operation of the church pending the resolution of the corporation’s appeal. That order effectively provided that the two factions would alternate possession of the church on a weekly basis and that neither the deacons nor Howard would enter the church on the weeks assigned to the other. On August 10, 2015, Howard filed his notice of appeal of the trial court’s June 2 judgment, docketed as appeal no. 1141212. The corporation’s and Howard’s appeals have since been consolidated for the purpose of writing one opinion.
II.
Both the corporation and Howard are asking this Court to review the trial court’s June 2 order dismissing their respective claims based on either a lack of standing or a lack of jurisdiction. We have stated that both the issue of standing and issues of jurisdiction present pure questions of law; accordingly, we afford the trial court’s ruling no deference on appeal and consider those issues de novo. Lumpkin v. State, 171 So.3d 599, 600 (Ala. 2014), and Blue Cross & Blue Shield of *810 Alabama v. Hodurski 899 So.2d 949, 953 (Ala.2004).
III.
We first consider the trial court’s dismissal of the claims asserted by the corporation against Howard stemming from Howard’s decision to continue acting as pastor of the church in spite of the fact that he accepted $16,600 from the corporation in exchange for his agreement to resign his pastorate. In dismissing the corporation’s complaint, the trial court concluded that the question at the heart of the corporation’s claims—whether Howard could continue as the pastor of the church—was a spiritual and ecclesiastical matter in which the court could not interfere -without violating both federal and state constitutional provisions. This conclusion is well founded in light of our prior caselaw on the topic.
In Williams v. Jones, 258 Ala. 59, 66-67, 61 So.2d 101, 107-08 (1952), the trial court was asked to decide a dispute among members of the Twenty-Second Avenue Baptist Church in Birmingham regarding the continued employment of their pastor. Members on both sides of the dispute ultimately agreed that the trial court should supervise an election to settle that question; they further requested that the court appoint a special master to conduct the proceedings. The trial court thereafter acted in accordance with that agreement and, following the election, entered its judgment based on the report of the special master. However, after representatives of the losing faction appealed, this Court reversed the judgment of the trial court, holding that the dispute was beyond the jurisdiction of the court and further stating that “[w]e have been unable to find any authority which even remotely tends to uphold the jurisdiction of the civil courts in a matter of this kind.” 258 Ala. at 67, 61 So.2d at 109.
Subsequently, in In re Galilee Baptist Church, 279 Ala. 393, 394, 186 So.2d 102, 103 (1966), this Court was called upon to “bring order out of a chaotic condition” inside Galilee Baptist Church in Birmingham as a result of a rift in the congregation regarding the pastor and claims by those on one side of the dispute that the pastor refused to leave his pastorate notwithstanding the fact that he had been properly relieved of his duties. After representatives of both factions petitioned the trial court for an injunction seeking to exclude the other faction from the church, the trial court held that the pastor was legally entitled to continue to “occupy the pulpit,” provided he agreed to schedule a meeting for a congregational vote to decide his future and the future of other church officers. 279 Ala. at 396, 186 So.2d at 105. After both factions appealed, this Court reversed the judgment of the trial court, stating:
“[T]he court was without authority to grant to [the pastor] the right to occupy the pulpit of the church subject to the condition that he call a congregational meeting on the date specified in the decree. Such action would in effect amount to the court taking over and running the affairs of the Galilee Baptist Church. This is beyond the jurisdiction of the court. Williams v. Jones, 258 Ala. 59, 61 So.2d 101 [ (1952) ]. Spiritual-ities are beyond the reach of temporal courts, and a pastor may be deposed by a majority of the members at a congregational meeting at any time, so far as the civil courts are concerned, subject only to inquiry by the courts as to whether the church, or its appointed tribunal has proceeded according to the law of the church. Barton v. Fitzpatrick, [187 Ala. 273, 65 So. 390 (1914) ].”
279 Ala. at 397, 186 So.2d at 106. See also Odoms v. Woodall, 246 Ala. 427, 429, 20 *811 So.2d 849, 851 (1945) (“The civil courts will not take jurisdiction of a controversy arising out of the removal of a minister if the right to the position is merely spiritual or ecclesiastical.”), and McGlathery v. Richardson, 944 So.2d 968, 977 (Ala.Civ.App.2006) (Murdock, J., concurring specially) (“[T]he underlying dispute in the present case arises out of a minority of the church members’ interests in voicing them disapproval of the pastor to the majority of the church. Such a dispute is a spiritual or ecclesiastical matter that is beyond the jurisdiction of a civil court.”).
The corporation nevertheless argues that the instant case is distinguishable from the cited cases inasmuch as Howard executed a contract formalizing his resignation. That fact, the corporation argues, makes this a civil and/or a contractual dispute as opposed to an ecclesiastical one. We disagree. As the trial court implicitly recognized in its order dismissing the corporation’s claims, even if Howard had resigned, there is still the question whether he could rescind his resignation or be rehired as pastor if that was the desire of the majority of the church’s members. Ultimately, only the congregation, not this Court, can answer that question. See, e.g., Abyssinia Missionary Baptist Church v. Nixon, 340 So.2d 746, 748 (Ala. 1976) (“This court takes cognizance of the well established case law of this State pertaining to the Baptist Church and the limited nature of this State’s courts’ jurisdiction over the business transacted within the Baptist Church. In a Baptist Church, the congregation rules. The majority of the members of the church control the business of the church, and the minority must submit to the will of the majority.”). Accordingly, we affirm the trial court’s dismissal of the corporation’s complaint.
IV.
We next consider the trial court’s dismissal of Howard’s claims asserting conversion, breach of fiduciary duty, unjust enrichment, breach of contract, re-plevin, and conspiracy and seeking an accounting of church funds from 2005 to the present, a temporary restraining order enjoining the corporation and its directors from expending any church funds, and an order requiring the corporation to turn over to Howard all funds held on behalf of the church. The gravamen of Howard’s claims is that the corporation and its directors have wrongfully refused him access to financial records of the church and to church funds, and he also makes vague allegations that the corporation and its directors have misused church funds. The corporation denies that Howard has been refused access to any records, denies any misuse of church funds, and maintains that it is the proper party to control the church’s finances. Unlike the selection of a pastor, these are not ecclesiastical issues that a court lacks jurisdiction to consider.
In McClendon v. Pugh, 49 So.3d 1238, 1239 (Ala.Civ.App.2010), the Court of Civil Appeals considered an appeal stemming from similar facts: A Baptist church’s board of deacons acted to discharge the church’s pastor, and, instead of leaving his pastorate, the pastor then called a meeting at which he presided over the election of a new board of deacons amenable to his continued employment. The original deacons then sued the pastor, alleging that he had mismanaged church property and misused church funds and requesting, among other things, that the trial court enjoin the pastor from using any other church assets, order an accounting of church bank accounts from the time the pastor gained access to them, and compel the pastor to resign. After the pastor complied with the trial court’s subsequent order to conduct a new election of deacons—at which the pastor’s favored candidates again were elected—the pastor moved for a summary judgment, arguing that the deacons’ re *812 maining claims dealt with internal church matters outside the jurisdiction of the court; the deacons countered by arguing that the issues they had raised “related solely to financial and property rights, not ecclesiastical or religious differences.” 49 So.3d at 1239. The trial court agreed with the pastor and entered a summary judgment in his favor; however, on appeal the Court of Civil Appeals reversed that part of the trial court’s judgment, stating:
“We are limited in our authority to interfere with the internal matters of a church. McKinney v. Twenty-fifth Avenue Baptist Church, 514 So.2d 837, 839 (Ala.1987). ‘As in the case with all churches, the courts will not assume jurisdiction, in fact has none, to resolve disputes regarding their spiritual or ecclesiastical affairs. However, there is jurisdiction to resolve questions of civil or property rights.’ Abyssinia Missionary Baptist Church v. Nixon, 340 So.2d 746, 748 (Ala.1976) (citing Williams v. Jones, 258 Ala. 59, 61 So.2d 101 (1952)). The contestants argue that the trial court had jurisdiction to consider the relief requested in them complaint because, the contestants argue, the underlying dispute in this case concerns the financial affairs and property interests of the Church and does not involve any spiritual or ecclesiastical concerns.
“The contestants rely on Yates v. El Bethel Primitive Baptist Church, 847 So.2d 331 (Ala.2002), in which the Alabama Supreme Court considered the question whether the courts had jurisdiction over a dispute between rival factions of a church. In holding that the courts had jurisdiction in that case, our supreme court noted that ‘“the civil courts of this state have taken jurisdiction of disputes between factions of Baptist churches or of churches similarly governed on the ground that property or civil rights were involved.”’ Yates, 847 So.2d at 336 (quoting Williams, 258 Ala. at 62, 61 So.2d at 104). Our supreme court went on to note that case ‘began as one involving the finances, financial assets, and business of the Church, not any of its purely ecclesiastical or spiritual features, and those financial and business aspects of the Church have remained center stage throughout.’ Id. at 336. Thus, the question whether the trial court had jurisdiction in this case to consider the contestants’ claims for relief is dependent on whether this case involves matters of spiritual or ecclesiastical concerns or if it involves matters of financial and property rights.
“In this case, the contestants alleged that [the pastor] mismanaged the financial assets and the property of the Church. The contestants’ allegations that [the pastor] had used Church funds for personal gain, that he had mismanaged Church property, that he had destroyed church records, and that he had refused to comply with a subpoena duces tecum do not involve any ecclesiastical or spiritual matters. As in Yates, ‘neither side ... seeks to raise [theological] questions. They argue no issues of differences in religious faith or creed, and argue no spiritual conflicts, or ecclesiastical doctrine. Rather, the underlying dispute revolves around the property of the Church—control over its financial assets and affairs—and not God.’ Id. at 346' Because this case does not involve any ecclesiastical or spiritual issues and is instead focused solely on issues involving the financial affairs and property rights of the Church, we hold that the trial court had jurisdiction to consider the merits of the contestants’ complaint.”
49 So.3d at 1240-41. The claims asserted by Howard similarly concern the church’s financial assets and affairs, which are not theological questions or ecclesiastical or spiritual issues. Accordingly, the trial *813 court erred by concluding that it lacked jurisdiction to consider Howard’s claims, and its judgment in that regard is due to be reversed.[7]
V.
The trial court dismissed both the claims asserted by the corporation against Howard and the counterclaims asserted by Howard against the corporation and its directors. We affirm the trial court’s dismissal of the corporation’s claims in appeal no. 1141312 because the trial court correctly determined that it lacked jurisdiction to resolve the ecclesiastical issue presented in that appeal. However, we reverse the dismissal of Howard’s claims in appeal no. 1141212 because the issues underlying that appeal involve only the financial affairs and property rights of the church, not ecclesiastical matters, and we remand the case for proceedings consistent with this opinion.
1141132—AFFIRMED.
BOLIN, PARKER, MAIN, WISE, and BRYAN, JJ., concur.
SHAW, J., concurs specially.
MURDOCK, J., dissents.
1141212—REVERSED AND REMANDED.
BOLIN, SHAW, MAIN, and WISE, JJ., concur.
MURDOCK, J., concurs specially.
BRYAN, J., concurs in the result.
PARKER, J., dissents.

. St. Union Baptist Church is at times identified in the record and by the parties as St. Union Missionary Baptist Church.

. The church’s board of deacons has at least sometimes consisted of more than five deacons, and it is not always clear if the entity making administrative decisions is the entire board of deacons or just those also serving as directors of the corporation. For clarity, we will refer to the board of deacons as “the board of deacohs" or simply “the deacons” and will refer to the corporation only when it is clear that the deacons serving as directors of the corporation were acting in their corporate capacity.

. It is not clear from the face of the charge who prepared it.

. Three of the five deacons serving as directors of the corporation at the time this litigation began were also original incorpo-rators. We further note that one of those three deacons subsequently stated in a deposition that the body of the church did in fact give the deacons authority to form the corporation.

. No party challenged the trial court's authority to enter the March 23 order, and there is some indication that the order merely reflects an agreement reached by the parties.

. Howard asserts that the police and local government leaders are biased against him and in favor of the deacons.

. The trial court also stated that it was dismissing the claims asserted by Howard because he lacked standing. On appeal, the parties have not addressed the issue of Howard’s standing; however, we think it evident that Howard, a member of the church and the presumed pastor, has standing to pursue his claims. See, e.g., Walters v. Stewart, 838 So.2d 1047, 1051 (Ala.Civ.App.2002) ("Although [the pastor] challenges the standing of [the appellees] based on what, he says, is their current nonattendance at church services, our supreme court has held that even former church members have standing to sue when the issues are their alleged wrongful expulsion and the claimed misappropriation of church funds by the minister. See Abyssinia Missionary Baptist Church v. Nixon, 340 So.2d 746 (Ala. 1976).”).