MURDOCK, Justice
(concurring specially in appeal no. 1141212 and dissenting in appeal no. 1141132).
It appears that the appeal and the cross-appeal are two sides of the same coin. I *814 would reverse the trial court’s judgment in both cases.
As this Court reiterated in Foster v. St. John’s Baptist Church, Inc., 406 So.2d 389, 391 (Ala.1981): “Alabama follows the general rule expressed in Odoms v. Woodall, 246 Ala. 427, 429, 20 So.2d 849, 851 (1946): ‘The civil courts will not take jurisdiction of a controversy arising out of the removal of a minister if the right to the position is merely spiritual or ecclesiastical....’” And in Odoms v. Woodall, 246 Ala. 427, 429, 20 So.2d 849, 851 (1945), the Court also said that a man’s status as a pastor of a church is left to the appropriate church tribunal “if there is no violation of contractual right.”[9]
But the claims asserted by St. Union Baptist Church, Inc., and its directors at issue in appeal no. 1141132 are not “merely spiritual or ecclesiastical.” Here, there is a civil contract and an alleged “violation of contractual right.” Under the apparent terms of that contract, one party to the contract, the corporation, paid the other party, James M. Howard, Sr., $16,600 in return for that other party’s agreement that he would no longer serve as the pastor of St. Union Baptist Church. The corporation now seeks to enforce that contract.[10]
As the corporation argues, then, this case is about the enforcement of a civil contract. That fact, among others discussed below, distinguishes the corporation’s initial action from other cases in which courts have declined to involve themselves. The main opinion disagrees with this contention on the ground that “there is still the question whether [Howard] could rescind his resignation or be rehired as pastor if that was the desire of the majority of the church’s members.” 211 So.3d at 811. But it is this very “rescission” that the corporation contends constitutes the violation of the contract that, by this action, it seeks to enforce. As for the possibility of the majority of the church members voting to rehire Howard as pastor, Howard claims that, in essence, that already has happened. But the directors of the corporation deny the efficacy of any such vote.
At this point, in fact, I believe there are issues common to both the original action of the deacons of the church and the counterclaim filed by Howard that go beyond the efficacy and the remedy, if any, of the contract itself. Based on the entirety of the pleadings and the record evidence already presented, I conclude that there are contract and property rights at stake that require the courts to address the following questions: (a) whether Howard is in fact the current pastor of the church, (b) if so, whether Howard has been duly authorized to file this action on behalf of the church, and (c) whether the deacons are still the deacons of the church and, if they are, whether they, acting as such or as the directors of the corporation, have authority over the church property at issue.
This Court’s opinion in Odoms is instructive:
*815 “So that the controversy seems to narrow to one of whether the officers of the church have the control of the use of the church house and can direct its preaching and teaching, especially when approved by a majority of its members, or whether Woodall claiming to be its pastor can control the use of the property with the approval of a minority not acting as a church congregation.
[[Image here]]
“If the complainants can sustain by due proof taken according to equity rules the matter set forth in the sworn bill and affidavits, relief would be due them in respect to the right to hold and use the property of the church.
“If no property rights are involved, there is no jurisdiction of the court to interfere. 45 Amer. Jur. 755, section 45; Caples v. Nazareth Church, 245 Ala. 656, 18 So.2d 388 [(1944)].... The civil courts will not interfere in its internal affairs, except to protect property rights....
[[Image here]]
“The complainants in the instant case tender a justiciable question when they allege that a tribunal of the church having authority has withdrawn from Woo-dall his rights as an elder and to preach in its house of worship, but that he refuses to abide by that action and holds properties of the church, and contends that he has the right to preach in it and use its properties contrary to the direction and authority of such church tribunal. Woodall’s denial of that claim, set out in his affidavit, shows the propriety of its trial in civil courts to determine the right to the control and use of the church property.”
246 Ala. at 429-30, 20 So.2d at 850-51.
In Gewin v. Mt. Pilgrim Baptist Church, 166 Ala. 345, 51 So. 947 (1909), this Court concluded that the question before it was not one of religious doctrine, but which of two factions stood for the “true Mt. Pilgrim Church” and, therefore, had title to the church property and the right of possession of that property:
“It must be conceded that the courts have no power to revise ordinary acts of church discipline or pass upon controverted rights of membership. Hundley v. Collins, 131 Ala. 234, 32 So. 575, 90 Am. St. Rep. 33 [ (1902) ]. But such considerations are attended to when they form the basis upon which civil rights and rights of property depend. While the courts cannot decide who ought to be members, they may inquire whether any disputed act of the church affecting property rights was the act of the church, or of persons having no authority. Bouldin v. Alexander, 15 Wall. 131, 21 L.Ed. 69 [ (1872) ].”
166 Ala. at 349, 51 So. at 948.
In Abyssinia Missionary Baptist Church v. Nixon, 340 So.2d 746 (Ala.1977), this Court said:
“A more accurate reflection of present Alabama law on this subject is found in In re Galilee Baptist Church, 279 Ala. 393, 186 So.2d 102 (1966); also involving a dispute between two opposing factions, and the alleged expulsion of the pastor at a congregational meeting. This court demonstrated it is proper for the courts to inquire whether a congregational meeting, at which church business is to be transacted, was preceded by adequate notice to the full membership, and whether, once called, the meeting was conducted in an orderly manner and the expulsion was the act of the authority within the church having the power to order it.
“Once the court is presented with sufficient evidence regarding the regularity of the meeting, it will then generally refuse to inquire further as to the fruits *816 of the meeting. As was stated in Galilee:
“ ‘Spiritualities are beyond the reach of temporal courts, and a pastor may be deposed by a majority of the members at a congregational meeting at any time, so far as the civil courts are concerned, subject only to inquiry by the courts as to whether the church, or its appointed tribunal has proceeded according to the law of the church.’ ”
340 So.2d at 748. See also Yates v. El Bethel Primitive Baptist Church, 847 So.2d 331, 336 (Ala.2002) (noting that, “[i]n Williams v. Jones, 258 Ala. 59, 62, 61 So.2d 101, 104 (1952), we cited several of our cases in which, ‘the civil courts of this state have taken jurisdiction of disputes between factions of Baptist churches or of churches similarly governed on the ground that property or civil rights were involved’ ” and that “[tjhis case began as one involving the finances, financial assets, and business of the Church, not any of its purely ecclesiastical or spiritual features, and those financial and business aspects of the Church have remained center stage throughout”).
Based on the entirety of the pleadings and the evidence before us, it appears to me that, in the present case, civil and property rights are at stake that require the courts to decide a number of issues, including, but not necessarily limited to, the following: (1) whether the action taken to remove the deacons over two years ago was taken in accordance with the law of the church, (2) whether the congregation or Howard would be estopped or otherwise prevented from relying on that action as a result of the passage of time and/or subsequent acts or omissions of the parties, and (3) whether there have in fact been more recent, efficacious votes by the congregation to remove the deacons and/or to rehire Howard following his resignation.
That said, in the event that it is determined that Howard does not in fact have the capacity (and I submit that the issue would be one of capacity, not standing) to represent the interests of the church in this litigation, then the counterclaims may be due to be dismissed for lack of such capacity and/or the absence of necessary and indispensable parties. At this juncture, however, I believe the tidal court’s disposition of the parties’ claims was not proper; therefore, I would reverse the judgment of the trial court in the appeal as well as the cross-appeal.

. As the Court likewise stated in Odoms: ''[I]f [a pastor] has a civil or property right in his position, the civil courts will protect that right.” 246 Ala. at 429, 20 So.2d at 851. The converse—civil court protection of a contract right to exclude someone as pastor—would also be true.

. Applicable principles of law governing available remedies for breach of contract may or may not allow for the injunctive relief or specific performance sought by the corporation. That issue goes to the legal merits of the case, not what this Court has referred to as "jurisdiction” to decide those merits. See generally, e.g., Odoms, 246 Ala. at 429, 20 So.2d at 851 (referring to the issue as whether the courts should "take jurisdiction” over a dispute involving church affairs).