# Stewart *et al. v.* White *et al.*

## Bill in Equity to enjoin the Maintenance of a Mill Dam.

1. *Injunction of mill dam; right of deacons of church to maintain bill; easement; prescription.*—Certain persons describing themselves as "deacons of Liberty Baptist Church," filed a bill to enjoin the maintenance of a mill dam. It was averred in the bill that by reason of the dam, the waters of Hurricane Creek, across which it was constructed, flowed back upon and destroyed the use of a spring and a place on said creek used for baptismal purposes, in which the complainants claimed to hold rights for said church, which was alleged to be an unincorporated religious association. It was further averred that in 1858 a deed was executed by the grantors named therein, in which there was conveyed to two persons "as deacons of Liberty Bapست Church, and to their successors as deacons of said church," for the use of the church, a lot of land described as "commencing at the bridge on the Jacksonville & Rome road, on the south bank of Hurricane creek, running down said creek 22 rods to a water oak, thence southwest to a corner," etc.; that the deed also contained a clause by which the grantor "for and in consideration as aforesaid, give and grant to said church the privilege of using above said bridge and road, unincumbered by them and their assigns, reserving to themselves the privilege of using said spring also," followed by the stipulation to warrant and defend the titles "to said church, their heirs and others person or persons whatsoever." It was then averred that said church, through its deacons, for the use and benefit of said church, had been in the open, notorious, continuous and adverse possession since 1858, of said spring, and also of said creek on the northern boundary of the lot, for the use and benefit of said church for baptismal purposes, and that no one had exercised any control over either the spring or creek at the place designated from 1858 up to the time of the obstruction complained of, except said church. *Held*: (1.) That said deed gave to the complainants no property right or title in the spring or creek, because it does not show that the grantors in said deed ever owned such property, and be-

cause the deed does not purport to convey any interest in either the creek or spring; and that, therefore, the complainants are not entitled to the relief prayed for by reason of said deed, it appearing that they have, neither as individuals or in a representative capacity, any property right or title, by reason of said deed, in either the spring or creek. (2.) The complainants show no right by prescription in either the spring or creek.

2. *Easement by prescription; what necessary to be shown.*—Where an easement is claimed by prescription it must be shown that the user and enjoyment was adverse to the owner of the estate under a claim of right exclusive, unincumbered and with the knowledge, actual or presumed, of such owner; and if the user is merely presumptive, tolerated by the owner, or held under an implied license from him, it is revocable at pleasure, and will never ripen into a title by prescription.

3. *Churches; unincorporated can not hold title.*—A church society collectively, which is unincorporated, is without capacity to acquire or hold title to property.

4. *Same; rights of deacons as officers of the church to acquire property.*—A deaconship in a church pertains only to the church policy and is not an officer recognized in secular government; and, therefore, deacons of a church, as such, have no capacity to either acquire in themselves or to transmit to successors in their ecclesiastical office any rights or titles to property, and have no right to sue in their official capacity as such deacons.

APPEAL from the Chancery Court of Cherokee.

Heard before the Hon. RICHARD B. KELLY.

The bill in this case was filed by the appellees, Thos. H. White, William Pope and John Casey "as deacons of the Liberty Baptist Church" against the appellants, B. M. Stewart, D. D. Smith and J. A. Smith, "as individuals and partners doing business under the firm name of the Stewart Smith Gin Company." The purpose of the bill and the facts averred therein are sufficiently stated in the opinion.

The defendants demurred to the bill, assigning twenty-six grounds of demurrer, which may be summarized as follows: 1. That complainants have no right to maintain the suit and are improper parties. 2. That the bill shows that Liberty Baptist Church is a necessary party, and is the only proper party complain-

ant to this suit. 3. That respondents as individuals are improperly joined as respondents with a partnership, and a recovery of damages is sought against the individuals composing said partnership for a tort alleged to have been committed by partners. 4. That the grant of said lands and the use of the spring is to the church and not the deacons. 5. The bill claims damages for distinct causes of action, that is one the injury to the spring, and the other for the use of the creek for baptismal purposes; and such claim for damages is too remote, indefinite and uncertain. And complainants as deacons show no easement or prescriptive right in the spring or stream. And it is not averred that the grantors in the deed were in the possession of the land and spring when such deed was made. 6. It is not shown that complainants as such deacons have been in the open, notorious and continuous possession of said spring and stream for twenty years. 7. That complainants are estopped to complain of such injury, having permitted defendants to erect said dam without objection. The defendants also moved to strike out of the bill the claim for damages, upon the ground that on the facts averred there is shown no proper element of damages, and such damages, as claimed, are too remote and uncertain.

Upon the submission of the cause upon the demurrers and motions, the court rendered a decree overruling the demurrers and the motions. From this decree the defendants appeal, and assign the rendition thereof as error.

BURNETT & CULLI, for appellants.

WHITSON & GRAHAM, *contra*.—As the owners of the bank of Hurricane creek where it flows along side their lot as described in the bill, complainants own to the middle of the stream and have the right to the use of its waters.—Gould on Waters, 375, §§ 148, 194, 196; Wood's Law of Nuisances, 145-146, § 334; Angell on Water Courses, §§ 10, 11, 95; 28 Am. & Eng. Ency. of Law, 947, 948, notes; *Franklin v. Mill Co.*, 88 Ala. 318.

[Stewart *et al.* v. White *et al.*]

The right to the relief prayed for is well established. A riparian proprietor has the right to the use of a stream flowing on or by his land for all proper purposes and beneficial uses, undiminished in quantity and uncorrupted in quality and purity. Such a right is a substantial right and easement, which is as high and sacred in the eyes of the law as his title to his lands, or in the language of Chancellor Kent: "A right to a stream of water is as sacred as a right to the soil over which it flows."—*Gardner v. Newburgh*, 2 John. Chan. 161; s. c. 7 Am. Dec. 526; *Stein v. Burden*, 29 Ala. 127; *Burden v. Stein*, 27 Ala. 104; *Ulbricht v. Eufaula Water Co.*, 86 Ala. 587; *Holsman v. Boiling Springs Co.*, 14 New Jersey Equity 335; *Carlson v. St. Louis River Dam Co.*, (Minn.) 41 L. R. A. 371.

Without a prescriptive right or express grant no man has the right to raise the waters of a stream and overflow or injure in any manner the upper owner. *M. G. Coy v. Dunley*, 57 Am. Dec. 681. To obstruct a water course is a private nuisance, actionable at law. "The jurisdiction of equity to interfere in such cases by injunctive relief, to prevent irreparable damage and avoid a multiplicity of suits, is clear and well established; *the remedy* at law being deemed inadequate. *Ulbricht v. Eufaula Water Co.*, 86 Ala. 590; *Lawson v. Mennsha*, 48 Am. Rep. 528; 3 Pomeroy's Eq. Juris. § 1351; *Barton v. Union Cattle Co.* (Neb.), 26 Am. St. R. 340.

SHARPE, J.—By this suit the complainants, claiming to sue "as deacons of Liberty Baptist Church," seek to enjoin the maintenance of a mill dam by which, by raising the waters of Hurricane Creek, is alleged to have injured a spring and also a place used for administering the rites of baptism in which they claim to hold rights for the church which is alleged to be an unincorporated religious association. Damages are also sought for alleged past injury resulting from the unlawful erection of the dam.

The bill alleges the existence of a deed which purports to have been made in 1858 by twelve persons signing as grantors to "William Robertson and Jas.

Horton as deacons of Liberty (H. Creek) Baptist Church and to their successors as deacons of said church" to whom the deed purports to convey for the use of the church, a lot of land described as "commencing at the bridge on the Jacksonville & Rome road on the south bank of Hurricane Creek running down said creek 22 rods to a water oak thence southwest to a corner, thence northeast 19 rods to said Jacksonville & Rome road, thence along said road 22 rods to the beginning in the ...... quarter of section.... in township twelve, of range ten, containing two and three-fourths of an acre more or less." The deed also contains the following clause: "Said party of the first part [the grantors] for and in consideration as aforesaid give and grant to said church the privilege of using above said bridge and road, unincumbered by them and their assigns, reserving to themselves the privilege of using said spring also, and the party of the first part for themselves, their heirs, administrators and executors do and by these presents will forever warrant and defend said titles as aforesaid to said church from their heirs and every person or persons whatsoever."

The bill further avers that "the said church through its deacons for the use and benefit of said church, has been in the sole possession and continuous use of said spring since 1858 to the present time, and has had the control of said spring through its deacons for the use and benefit of said church. That their possession has been open, notorious and adverse for more than twenty years before the filing of this bill. That the deacons of said church have been in the open, notorious and adverse possession of said creek on the north boundary of said lot for the use and benefit of said church for baptismal purposes for more than twenty years prior to the filing of this suit, and that no one has exercised any control either of said spring or the creek along the northern boundary of said lot, from 1858 to the time of the obstruction averred except said church. That the said church has kept said spring in good condition by putting in

various improvements from year to year, and has kept
said stream and its banks in good condition for bap-
tismal purposes during all the years of its ownership
of said lot."

To entitle complainants to relief it must appear
from the bill that they have either in an individual
or representative capacity, some property right in
the creek or spring sought to be protected. The deed
referred to cannot be depended on as a source of title
for two reasons; first, it is not shown that the grantors
therein ever owned the property, and second the deed
as here exhibited does not purport to convey any in-
terest in either the creek or spring. The rule of con-
struction whereby conveyances describing lands as
bounded by or running along a non-navigable stream
are held to convey the grantor's title to the stream's
center, is not applicable to this deed even if it be as-
sumed that the grantors had such title. Here the de-
scription is by lines running from object to object
and having designated lengths so as to enclose a
given quantity of land. The line which commences
at the bridge on the south bank of the creek, runs 22
rods down the creek to a water oak which distance is
computable by a straight line as is the lengths of the
other lines. For all that appears the water oak and
consequently the line may or may not be on the
water's edge, but apparently the words "down the
creek" are intended to indicate the general direction
of the line rather than that the creek, whether meander-
ing or not, should form that boundary.

As to the spring, which is nearby but off the church
lot, it is alleged in the bill as a conclusion that its
use was "granted to said deacons for the use and ben-
efit of said church." The only mention made of a
spring in the deed as copied in this transcript is in
the language above quoted wherein is expressed a
reservation in the grantors of the privilege of using
"said spring." In this there is no semblance of a con-
veyance to any interest in the spring. The allega-
tion of the deed's contents, controls the alleged con-
clusion as to the deed's effect, so that the bill can-

not be taken as averring a grant of an easement in the spring.

Complainants also assert rights by prescription in both the spring and creek. The use which gives title by prescription must have been for at least twenty years; but however long continued, if it is merely by the permission or without the knowledge of the land-owner the use will never confer title. To be adverse to the owner the user must have been such as to exclude him from possession and must have been continuous, uninterrupted and under a claim of right. *Steele v. Sullivan*, 70 Ala. 589; *Gage v. M. & O. R. Co.*, 84 Ala. 224. By the theory of prescription and likewise of title by adverse possession, a grant is presumed from long acquiescence of the landowner in the exercise of asserted rights which are inconsistent with his own. As in the case of an actual deed there must be some person, either natural or artificial, who can take title. The church society collectively, being unincorporated, was without capacity to acquire or hold title.—*Baptist Asso. v. Hart's Extrs.* 4 Wheat. (U. S.) 27; *Beaty v. Hurtz*, 2 Pet. (U. S.) 212. As deacons, no persons have capacity either to acquire in themselves or to transmit to successors in that ecclesiastical office any rights amounting to title in easements. Deaconship in a church pertains alone to the church policy, and is not an office existing or recognizable in our secular government. It confers no right to sue in the official capacity, and therefore the present suit cannot be considered as so brought.—*Allison v. Little*, 85 Ala. 512. The deaconship might by the society's regulations be made to carry with it an agency in the control and management of property, and it might be mentioned in a deed as descriptive of persons who might take successively under a conveyance made for the benefit of the society, but the legal relation of those occupying the office would be that of trustees and not that of church officials.

If it would be conceded that the words "as deacons," etc., used in the bill as stating how the complainants sue, and how they have acquired title, may be treated

as merely *descriptio personae* or as surplusage, and if it be further conceded that the complainants might as individuals maintain a suit in behalf of themselves and other members of the church for the protection of property rights belonging to them jointly, yet this bill fails to show the existence of such rights. It does not attempt to show that any particular person or persons have acquired title by user had either by himself or through others with whom he is in privity of estate, nor is the bill framed for relief upon the theory of individual ownership. For the reasons stated the demurrer should have been sustained.

If the deed referred to were shown to have been made by the owner of the land, and were further shown to have granted an easement in the spring according to the conclusion stated in the bill, then the complainants, answering the description of successors to the original takers, would hold as trustees of the society, and as such might sue on account of injuries to the spring; this under the jurisdiction of equity over charitable trusts as declared in *Burke v. Roper,* 79 Ala. 138. That the deed has such effect appears to have been assumed in briefs of counsel and in the chancellor's written opinion. This fact leads us to suspect that an error has occurred in copying the deed either into the transcript or the exhibit, but the error is not self-correcting, and we must determine the effect of the instrument as it is presented to us.

Let the decree be reversed and the cause remanded.