16 So.2d 179

**DAVIDSON et al. v. CHURCH OF CHRIST OF PARRISH et al.**

**6 Div. 121.**

Supreme Court of Alabama.

Nov. 18, 1943.

Rehearing Denied Jan. 13, 1944.

Arthur Fite, of Jasper, for appellants.

Curtis & Maddox, of Jasper, for appellees.

LIVINGSTON, Justice.

■ The bill of complaint seeks an injunction as affecting the use of the temporal properties of the Church of Christ at

Parrish, Alabama. Such suit may properly be filed in the name of the church though an unincorporated association. Sentell v. Friendship Baptist Church, 214 Ala. 584, 108 So. 517; Mitchell et al. v. Church of Christ at Mt. Olive, 219 Ala. 322, 122 So. 341, 342; Sections 142 et seq., Title 7, Code of 1940.

The bill alleges that:

"The said Church of Christ is congregational in its nature and creation, with no sovereign power independent of its membership but is governed exclusively by the will of its membership in good standing with no superior or directing power other than is found in the government of the church by its own membership. That said Church of Christ at Parrish has two duly appointed and acting elders, namely, W. H. Nelson and J. E. Bartley, and they are the sole and only elders of said congregation, and to them, as such elders, is delegated the power and duty of governing the congregation, having services conducted in an orderly way, appointing the song leaders, and appointing the Sunday School teachers, and as such elders they have authority to look after, govern the membership, appoint song leaders, Sunday School teachers, and arrange for orderly services, for each Sunday.

"That the said Church of Christ is in possession of and own the following real estate situated in Parrish, Alabama, namely: 'Lot 3, Block 5, according to Christian Addition to the town of Parrish, Alabama.' Upon which has been constructed a church building, in which the congregation of said church carry on a Sunday School and church each Sunday. That they have owned and been in possession of said property for several years; that said property is used wholly and solely for the purpose of holding said services therein. * * *

"That the above named elders have sole charge of the orderly manner of said worship and sole charge of the means and methods of using said property. That neither of the defendants are members of said church but are outsiders without any voice in the proceedings of the said church. * * *

"That the defendants have entered into an agreement or formed a conspiracy to prevent the said Church of Christ or its membership from having or holding orderly worship in their said church house and in pursuance of said agreement or conspiracy

they come to said church on Sunday. * * *

"That they have been interfering with the orderly use of said property for the purpose for which same was built and have been interfering with the duties and authorities of said elders; that they refuse to desist from said interference; that they threaten to keep it up; that they threaten to destroy or tear up or disrupt said congregation and that their interference among other things has been manifested by their coming to said church and into the main auditorium where several Sunday School classes are taught; some of them will pretend to teach a class; and others pretend to be members and get one or two others as such; that said one pretending to teach will talk out or hollow out in a loud and boisterous manner, and the others will laugh, talk, look around and sardonically laugh or grin or make faces at the others trying to teach or listen. That when the Sunday School is over and when services begin, they will, seemingly, take time about stalking up and down the aisle; aimlessly, making great noises going in and out; they will take front seats; they laugh and talk out loud and audibly; they write in song books, they grimace at the minister; they look back and grimace at the congregation, and sardonically laugh and grin or make faces; that they carry on such conduct continuously throughout the service; that at the close they block the aisles; call the members names; shake their fist in the face of the minister; are very loud and boisterous, and are preventing the orderly use of said house for the purposes for which it was built and prevent the congregation having the benefit of orderly worship; that when the singing is going on or during the song service they will pitch their voice a step higher or a step lower than the tune being carried and sing in a loud voice; that they will at times take another verse and sing it while the members are singing the regular verse, as chosen by the leader; that they will change the reading from where the words reading 'we' to 'you' and in great derision they write on the margin of song books such expressions as 'ask Johnnie (referring to minister) if he loves you and me.' That on last Sunday one of them, while they were blocking the aisle one asked his little girl to go out and get a stick that he was tired of this damn business. That various other similar actions and singular statements are used. That they continue to carry on such conduct and

such disturbance; that they threaten to carry on the same in the future; that they refuse to desist although requested; that they do these things over the protest of the elders; that they will continue to come and to interfere and prevent orderly worship in said house and continue to prevent the orderly use of the property of the said church unless they are enjoined from appearing at said church and carrying on said disturbing conduct."

In short, the bill prays that the respondents be enjoined or restrained from disturbing the orderly conduct of the Sunday School and church services and from doing the acts and things set out in the bill of complaint. The trial court granted the relief prayed for.

Respondents interposed three pleas, and their answer, incorporating the three pleas, deny that the respondents did the acts charged in the complaint.

There is but a single question presented on this appeal. Appellants insist that since the Church of Christ is congregational in its nature and creation, with no sovereign power independent of its membership in good standing, with no superior or directing power other than is found in the government of the church by its membership, express authority of the congregation, acting as such, to institute the suit is necessary to sustain it.

As said by this court in the case of Mitchell v. Church of Christ at Mt. Olive, supra: "This means, when properly analyzed, that counsel filed the bill without making an express showing of due authority to do so. In this respect section 6255 of the Code [1923, Code of 1940, Tit. 46, § 48] seems to control, though it is stated to be only declaratory of the common law. To require a showing as to such authority, it must be challenged at the first term, by appropriate averment, stating the facts which induced such averment. Chamberlain, Miller & Co. v. Abbott, 152 Ala. 243, 44 So. 637, 126 Am.St.Rep. 30; Ashby Brick Co. v. Ely & Walker, etc., Co., 151 Ala. 272, 44 So. 96; Daughdrill v. Daughdrill, 108 Ala. 321, 19 So. 185. The proper method of making such a test is by a motion, section 6255, Code; Holman v. Hiatt, 215 Ala. 526, 112 So. 111, or by a plea, as was done, under circumstances similar to those of this case in Blount v. Sixteenth St. Baptist Church, 206 Ala. 423, 90 So. 602. See Pallilla v. Galilee Baptist Church, 215 Ala. 667, 112 So. 134. The fact that complainant is unincorporated can make no material difference in this respect." See, also, Mitchell v. Church of Christ at Mt. Olive, 221 Ala. 315, 128 So. 781, 70 A.L.R. 71.

The question was properly presented by plea in the instant case.

The Supreme Court of the United States in Watson v. Jones, 13 Wall. 679, 724, 20 L.Ed. 666, declared the principles which should govern the civil courts in the determination of property rights not subject to an express trust between contending factions of an independent or congregational church. This court in the case of Mitchell v. Church of Christ at Mt. Olive, 221 Ala. 315, 317, 128 So. 781, quoted with approval the following excerpt from Watson v. Jones, supra:

"The second class of cases which we have described has reference to the case of a church of a strictly congregational or independent organization, governed solely within itself, either by a majority of its members or by such other local organism as it may have instituted for the purpose of ecclesiastical government; and to property held by such a church, either by way of purchase or donation, with no other specific trust attached to it in the hands of the church than that it is for the use of that congregation as a religious society.

"In such cases where there is a schism which leads to a separation into distinct and conflicting bodies, the rights of such bodies to the use of the property must be determined by the ordinary principles which govern voluntary associations. If the principle of government in such cases is that the majority rules, then the numerical majority of members must control the right to the use of the property. If there be within the congregation officers in whom are vested the powers of such control, then those who adhere to the acknowledged organism by which the body is governed are entitled to the use of the property. The minority in choosing to separate themselves into a distinct body, and refusing to recognize the authority of the governing body, can claim no rights in the property from the fact that they had once been members of the church or congregation. This ruling admits of no inquiry into the existing religious opinions of those who comprise the legal or regular organization; for, if such was permitted, a very small minority, without any officers of the church

among them, might be found to be the only faithful supporters of the religious dogmas of the founders of the church. There being no such trust imposed upon the property when purchased or given, the court will not imply one for the purpose of expelling from its use those who by regular succession and order constitute the church, because they may have changed in some respect their views of religious truth."

The evidence shows, with little, if any, conflict, that W. H. Nelson and J. R. Bartley are the two and only elders of the Church of Christ of Parrish, Alabama. They were chosen, in the language of the witnesses, "by the contact". That is to say, the members of the church do not "vote," as the term is ordinarily used, but instead discuss among themselves the qualifications of a member to serve as an elder. An announcement is then made to the congregation that a certain named member is an elder, and if there is no objection voiced, he then becomes an elder. The evidence is without conflict that the Church of Christ at Parrish, Alabama, has no written creed or discipline.

The evidence further shows, with little, if any, conflict that the elders have the "oversight" of the congregation; that they are "overseers" of the flock: they have control of the Sunday School and name the teachers. They have control of the church services. And while there is a conflict in the evidence, there is ample evidence to support the church's insistence that the elders have authority to govern and control the temporal affairs of the church, and the church property.

It is true that the evidence is to the effect that the elders derive their authority from the New Testament. But we are not here concerned with the source of the authority, the authority itself is the material fact. The right to organize voluntary religious associations to assist in the expression and discrimination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations and officers within the general association, is unquestioned. All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it. Watson v. Jones, supra.

In effect, the trial court found that the elders of the Church of Christ at Parrish, Alabama, have and had the power and authority to bind the church by contract: that they have and had the power and authority to authorize the suit in the instant case.

 The testimony was taken ore tenus, and where that procedure is followed the judgment of the trial court will not be here disturbed, unless palpably wrong. Puckett v. Puckett, 240 Ala. 607, 200 So. 420; Bonds v. Bonds, 234 Ala. 522, 175 So. 561; McClurkin v. McClurkin, 206 Ala. 513, 90 So. 917; Wade v. Miller, 208 Ala. 264, 93 So. 905; McWilliams v. Phillips, 71 Ala. 80; Murphy v. May, 243 Ala. 94, 8 So.2d 442.

The decree of the trial court is due to be and is affirmed.

Affirmed.

GARDNER, C. J., and THOMAS and BROWN, JJ., concur.