42 So.2d 258

### HOLT et al. v. SCOTT et al.
### 7 Div. 981.

Supreme Court of Alabama.
Oct. 6, 1949.

Rains & Rains, Gadsden, for appellants.

Miller & Pittman and E. G. Pilcher, Gadsden, for appellees.

SIMPSON, Justice.

This case presents a typical factional dispute in an ecclesiastical body over doctrinal interpretation, wherein the appellants sought by their bill to enjoin the appellees, who were the elected officers and trustees, from use of the property of the Church of God of the New Testament on the basis of the contention that appellees and the remainder of the congregation—in fact, all but appellant Holt, the ex-pastor, and his wife—had disavowed and radically departed from the fundamental tenets and practices of the church as prescribed in its "Articles of Faith."

This is an appeal from the decree dissolving the temporary injunction. We are in agreement that the evidence adduced at the hearing failed to sustain the right to the writ.

It is quite true that where a religious society divides into two groups, one of which radically departs from fundamental ecclesiastical uages and principles which were accepted before the dispute arose, ordinary principles of majority rule do not apply and the group adhering to such usages and principles is entitled to the church property. Caples v. Nazareth Church, 245 Ala. 656(3), 18 So.2d 383.

580

■ But to justify court intervention, it is not enough that a schism has developed in the congregation merely on account of interpretation of doctrines. Mitchell v. Church of Christ, 221 Ala. 315(4), 128 So. 781, 70 A.L.R. 71.

■ To warrant interference by the court, it must clearly appear that the majority or the governing body of the religious society intends to gratuitously transfer the property to another denomination or to use it in the worship of doctrines or faith radically opposed to those prevailing in the congregation before the onset of the dispute—that is, that the majority is holding to a doctrine or faith essentially heretical or vitally and fundamentally different from that theretofore obtaining before the schism developed. Manning v. Yeager, 203 Ala. 185, 82 So. 435; Mitchell v. Church of Christ, supra.

It is not made so to appear here. From a careful scrutiny of the record it would seem that the pertinent pronouncements in the "Articles of Faith" over which the schism developed are the following:

"God's plan of salvation in principals, or fundamental parts of are: Repentance, water baptism, sanctification and the baptism of the Holy Ghost. Proof: Matt. 3–2–6, 11–15; 4:4; Acts 2:38–39; Titus 3:5–6; Heb. 10th 13:12; St. John 3–3–7; Heb. 6th., 9:17. That we are justified only through faith and obedience to the gospel of Jesus Christ, without the law of the old testament. The gospel being made known only through God called ministers. Proof: Rom. 10:15–15; I Cor. 15:–1–3; I Pet. 4–17; Gal. 2–16; Eph. 1:13; Rom. 5:1. That the New Testament plan is in full force since the death of the Testator. Heb. 9:16–17. Repentance is Godly sorrow of sins committed, and the inbred sin which all inherited from the fall of Adam. Sanctification is the cleansing, and redemption from all sin, since the blood was shed. Water baptism is a commandment, together with repentance for the remission of sins, before the Holy Ghost reception. But water baptism is also administered after the Baptism of the Holy Ghost, Proof: Cor. 7:10; Rom. 5:18; I John 1–7–9; Acts 10th and 11th; Mark 16:16; Acts 10th and 11th chapters. Acts 2:38; I Cor. 6:11; I Cor. 1:30; Acts 8th chapter; 10th and 19th.

"The evidence of the Holy Ghost baptism is the very same the disciples had on the day of Pentecost, when a sound came from Heaven and there appeared unto them cloven tongues like as of fire, and it (the sound) sat upon each of them. Those were the new tongues referred to in Mark 16, and the initial evidence of the Spiritual Baptism. The other tongues spoken in after the Holy Ghost had already come were earthly languages, or a Spiritual gift which enabled them to speak in the gospel to the different nationalities present around Jerusalem. Proof: Acts 2:1–2–3–4; 5–11; Rom. 8:16; I Cor. 14:21."

The appellants contend that under a long-standing interpretation of the foregoing, the old doctrine for admission to church membership did not require of an entrant the ability of "talking in the unknown tongues"; that this could come later to the more sanctified members, and that the assistant pastor, Scott, and the congregation had altered this doctrine to require this unusual attribute as a prerequisite to membership. Just what basis of deduction lead to either interpretation we are not advised from the record or otherwise. If the requisite of "talking in the unknown tongues" be considered literally, certainly no temporal tribunal could appraise the effect of such a command as bearing upon vital doctrines of the church, or if liberally construed, to mean that the proposed member was willing to submit himself to the doctrines and practices of the church as prescribed in the "Articles of Faith," then the dispute would not seem to have been of much substantial quality.

■ But this aside, there are two reasons why the decree must be affirmed. First, there was some proof, which it was the prerogative of the trial court to weigh and credit, that appellant Holt, the long-time pastor, and assistant pastor Scott were at one time in agreement on the interpretation placed on the Articles by appellee Scott, and second, it is so manifest that this is purely a doctrinal dispute which the court could not and should not

581

attempt to resolve. This controversy is typically a matter for resolution within the society and one on which the civil law should lay no hand.

Affirmed.

BROWN, FOSTER, and LAWSON, JJ., concur.