The **BOARD OF INCORPORATORS OF the AFRICAN METHODIST EPISCO-PAL CHURCH**, a Religious Corporation, Plaintiff,

v.

**Arthur G. GASTON et al., Defendants.**

**Civ. A. No. 71-713.**

United States District Court,
N. D. Alabama, S. D.

Jan. 31, 1972.

Thurman L. Dodson, Washington, D. C., Demetrius C. Newton, Birmingham, Ala., for plaintiff.

Arthur D. Shores, Birmingham, Ala., Ernest D. Jackson, Sr., Jacksonville, Fla., for Arthur G. Gaston, Sr.

L. Vastine Stabler, Jr. and Frank C. Galloway, Jr., Cabaniss, Johnston, Gardner & Clark, Birmingham, Ala., for The First National Bank of Birmingham.

Jerome K. Lanning, Johnston, Barton, Proctor, Swedlaw & Naff, Birmingham, Ala., for National Bank of Commerce of Birmingham.

MEMORANDUM OPINION

LYNN, Chief Judge.

*Pleadings*

No oversimplification is intended in describing the thrust of plaintiff's complaint as an effort to recover funds, admittedly belonging to it, deposited with defendants, The First National Bank of Birmingham, The National Bank of Commerce, and Citizens Federal Savings & Loan Association, respectively, by defendant, Arthur G. Gaston, under his

purported authority as Treasurer of the African Methodist Episcopal Church (A.M.E. Church) and pursuant to a resolution, dated on or about May 19, 1971, subscribed by defendant, Bishop William Franklin Ball, under his purported authority as President of the General Board of A.M.E. Church, to restrain defendants from withdrawing or permitting further withdrawals from such accounts, and to hold defendants accountable for all funds previously withdrawn.

Insisting that it is entitled to the relief for which it prays, plaintiff contends that defendant, Gaston, was effectively suspended from the office of Treasurer pending the convening of the quadrennial General Conference of the A.M.E. Church on the third Monday of June 1972, by action of its General Board on July 20, 1971, in which its Council of Bishops concurred on July 20, 1971.

Asserting that he became Treasurer of the A.M.E. Church in July, 1968, defendant Gaston, a layman, by his counterclaim contests the validity of his suspension and vigorously attacks the actions of the General Board and Council of Bishops as having been violative of The Book of Discipline of the A.M.E. Church, 1968 (A.M.E. Dis.) and of procedural due process therein provided. He seeks injunctive relief to restore him to such office with all privileges thereunto appertaining, including his annual salary of $7,000.00.[1]

The answers filed in behalf of defendants banking and financial institutions, merely stakeholders of the church funds, and the answer filed in behalf of defendant, Bishop Ball, are laid to one side in order to focus attention upon the live controversy which lies at the heart of this litigation.

*Facts*

Secular and religious chronicles attest to the bitterness engendered by intra-family disputes, especially where the family is a church, as do countless records in trial and appellate courts. The quarrel which spawned this litigation apparently had its genesis in the employment of Ernst & Ernst by the General Board, at the request of defendant, Gaston, to audit all accounts of each agency of the church and to establish an efficient and reliable accounting system.

When such audit was focalized upon the accounts of the Minimum Salary Department, of which Dr. H. Ralph Jackson, a non-voting member of the General Board, was Director, irritation rapidly erupted. In swift order, on March 9, 1971, the General Board voted to remove Bishop Ball as its President, to discharge Ernst & Ernst, to dismiss Belford V. Lawson, Jr., who had instituted suit against such Department, as its General Counsel, and to declare the office of Treasurer vacant and suspend defendant Gaston until the next General Conference.

Thereafter, pursuant to the provisions of the Discipline,[2] defendant Gaston petitioned the Judicial Council to render a declaratory decision with respect to the authority of the General Board and Council of Bishops to remove or suspend the General Treasurer. On May 14, 1971, the Judicial Council handed down its decision that "the General Board does not have the power to summarily declare the office of General Treasurer of the A.M.E. Church vacated nor to suspend the duly elected General Treasurer from office," and ordered defendant restored to such office "effective immediately."[3]

---

1. A.M.E. Disc. 472.

2. A.M.E. Disc. 102, 103, par. 8.

3. Pertinent here are the following paragraphs of such decision:
   (1) The General Board does not have the power to summarily declare the office of General Treasurer of the A.M.E.

Church vacated nor to suspend the duly elected General Treasurer from office.
   (2) The General Treasurer is amenable to the Council of Bishops and the General Board, see 1968 Discipline, page 505, para. 18; page 86, paragraph 2.
   (3) The General Board may not remove the General Treasurer or any other

In the face of this decision, on May 18, 1971, the General Board passed and transmitted to Union Trust Company, Washington, D. C., a resolution reaffirming the resolution filed with such bank, rejecting the signature of defendant Gaston on checks drawn upon church funds on deposit therein and authorizing three other officers of the church to exercise the authority and duties of the General Treasurer. The General Board has taken physical possession of the Treasurer's office and records in Washington, D. C., and has refused to return them to defendant Gaston.

Subsequent to the May 14, 1971, decision of the Judicial Council, the General Board, with the concurrence of the Council of Bishops, preferred and served upon defendant Gaston charges of misfeasance and malfeasance in office, together with notice of a hearing thereon before a committee of the Board in Los Angeles, California, on July 16, 1971. Such committee reported to the Board that, after a full hearing, all charges had been supported by evidence. On July 20, 1971, the General Board sustained the findings of the hearing committee and recommended that defendant Gaston be suspended from his position as General Treasurer pending the next session of the General Conference. On July 22, 1971, the Council of Bishops concurred in such action and recommendation. Neither defendant Gaston nor his attorney participated in these proceedings beyond the point of objecting to jurisdiction.

### Discussion

Jurisdiction in the case *sub judice* is based on diversity of citizenship. It is incumbent upon this Court to apply the law of the forum, that is to say, the law of Alabama which has been clearly synopsized by its Supreme Court as follows:

> It is firmly established that courts decline to assume any jurisdiction as regards the purely ecclesiastical or spiritual feature of the church.

> On the other hand, in many cases we have recognized the right and duty of civil courts to exercise jurisdiction to protect the temporalities of the church, such as where civil rights or rights of property are involved. (citations omitted) Williams v. Jones, 258 Ala. 59, 61 So.2d 101 (1952) [4]

The A.M.E. Discipline contains no explicit provisions for the removal or suspension of a general officer of the church. General language dealing with the responsibility of general officers, quoted as follows:

> For faithfulness in the discharge of their offices in the interim of the General Conference, General Officers are amenable to the Council of Bishops and the General Board.[5]

was held by the Judicial Council, the juridical body of the church [6] to empow-

---

General Officer without first causing specific charges to be filed, adequate notice and a full opportunity to be heard afforded. Any action taken by the General Board for the purpose of removing a General Officer must be concurred in by the Council of Bishops.

\*    \*    \*    \*    \*

(5) Dr. A. G. Gaston is by order of this Judicial Council restored to the office of General Treasurer of the A.M.E. Church effective immediately.

Prior to assuming his duties he shall procure a proper bond in accordance with Sec. 4, 1968 Discipline, Pages 84–85.

(6) The action of the General Board on March 9, 1971, in designating the President of the General Board, the General Secretary and the Chairman of the Commission on Statistics and Finance as signatories of any and all accounts, banking and otherwise all monies of the A.M.E. Church is declared illegal and contrary to the Discipline as violative of subparagraph 6, part XI, page 482.

4. Accord: Bouldin v. Alexander, 15 Wall. 131, 82 U.S. 131, 139, 21 L.Ed. 69 (1872); Sims v. Greene, 160 F.2d 512 (3d Cir. 1947); Taylor v. Jackson, 50 App.D.C. 381, 273 F. 345 (1921).

5. A.M.E. Disc. 86, par. 2. See also A.M.E. Disc. 505, par. 18.

6. "The Judicial Council is the highest Judicatory Body, it is an Appellate Court,

er neither Council nor Board summarily to remove or suspend a General Officer. At the trial of this case, its President, Judge Charles Lunderman, Jr., testified unequivocally that, in his opinion, neither had the power to remove or suspend a General Officer.

That is not to say that the General Treasurer may not be removed or suspended for malfeasance or misfeasance in office. In this connectional Church supreme and inviolable authority reposes in the General Conference. In its regular quadrennial session [7] or in extra session [8] assembled it has the undoubted power to remove or suspend a General Officer.

Moreover, implicit in the provision for the trial of General Officers [9] is recognition that appropriate punishment to fit the crime may be imposed following conviction. Such punishment might include either removal or suspension from office. It is the opinion of this Court that the General Board committed prejudicial error in ignoring the plain language and clear intent of this provision and that its trial and punishment were abortive.

Defendant Gaston was not a Ministerial General Officer. He was a layman and was therefore subject to the rules for trying members. Procedure for the trial of lay members from arraignment to appeal is carefully spelled out.[10] No attempt was made to follow that procedure.

■ This Court is aware that the General Board followed the guidelines suggested by the Judicial Council relating to specific charges, adequate notice, and a full opportunity to be heard. However, in the absence of clear and convincing language to that effect, the Court will not impute to the A.M.E. Church an intent to subject the reputation and property rights of a lay General Officer to trial by the General Board acting in both an accusatory and adjudicatory capacity. It would seem to be offensive to notions of fair play.

In view of the foregoing discussion of the issues in this case, it is quite apparent that neither the judgment of the United States District Court for the District of Columbia in the case of Arthur G. Gaston, Sr. v. Union Trust Company, et al., Civil Action No. 515–71, filed April 2, 1971, nor that of the same court in the case of The Board of Incorporators of The African Methodist Church, et al. v. Union Trust Company, et al., Civil Action No. 1019–71, filed July 2, 1971, aids plaintiff on principles of *res adjudicata* or collateral estoppel.

There remains the contention that Union Trust Company of Washington, D. C., is the official depository of the A.M. E. Church. The Court has searched the A.M.E. Discipline in vain for such a designation. No credible evidence has been offered to such effect.

An appropriate judgment will be entered denying the relief for which plaintiff prays and granting injunctive relief to defendant Gaston on his counterclaim.

---

chosen by the General Conference and is amenable to it." A.M.E. Disc. 92. Its jurisdiction, organization and duties are carefully defined. A.M.E. Disc. 97–105.

