289 So.2d 584

**Mary Jo MURPHY**

v.

**Herbert TRAYLOR et al.**

**SC 451.**

Supreme Court of Alabama.

Jan. 31, 1974.

Dillon, Kelley & Barnes, Alexander City, for appellant.

Howard & Dunn, Wetumpka, for appellees.

MERRILL, Justice.

This appeal is from a decree vesting title in Equality United Methodist Church, a corporation, to 2½ acres of land near the church.

The trustees of Equality Methodist Church and Equality United Methodist Church, a corporation, filed a declaratory judgment proceeding to establish the owner of the land in question.

Fred Raht Whitaker died testate on August 1, 1953. Under Paragraph 2 of his will, Whitaker provided that:

"All of the real estate which I shall own at my death, I give and devise to my beloved wife, Dorma Jewell Whitaker, if she shall survive me, for her natural life time; and if she shall not survive me, then I give and devise the same to Josie L. Yates, my wife's aunt and step-mother, for the term of her natural life time. And if both my wife and the said Josie L. Yates shall survive me, and if then my said wife shall die, leaving the said Josie L. Yates surviving, then in that event I give and devise the same to the said Josie L. Yates for her life time. If neither of them shall survive me, or on the death of the survivor of them, I give and devise the same to the Equality Methodist Church, in fee simple, the same to be used by said church for such purposes as it shall see fit."

At the time of the death of Whitaker, the church was an unincorporated association. It was incorporated more than ten months prior to the trial.

The question presented to the trial court and here, on appeal, is whether the devise to the church is valid, inasmuch as the church was not incorporated when the testator died but was incorporated before the trial.

The pertinent part of the trial court's decree follows:

"That the Equality Methodist Church was at the time of the termination of the life estate an unincorporated religious body with a board of trustees consisting of Herbert Traylor, Charles Selman, R. W. Granger, Thomas W. Barkely, Bobby Granger, William C. Wilson and Morris Wilbanks.

"The Court having understood and considered the evidence in this cause, it is the opinion of the Court that the Equality Methodist Church was without legal capacity to receive and hold real property at the time of the termination of the life estate created by Fred Raht Whitaker. The Court is also of the opinion that such incapacity could be abrogated by a subsequent legal incorporation of the church under appropriate provisions of law, and that this incorporation was in fact accomplished by the church prior to the Court hearing this cause.

"It is the further opinion of the Court that when the life estate was terminated by the death of Dorma J. Whitaker the fee simple title to this real property vest-

ed in the hereinabove named trustees of the Equality Methodist Church in trust until such time as the church acquired legal capacity to receive and hold real property in its own name as an incorporated body."

The appellant argues that an unincorporated religious society is without capacity to acquire or hold title to realty and cites McLean v. Church of God, 254 Ala. 134, 47 So.2d 257, and other cases which so hold. In *McLean*, this court stated in part:

"We have no statute nor have we recognized charitable or religious societies as having a quasi corporate existence with power to hold land, as has been done in some jurisdictions. 10 Am.Jur. section 33, page 609. On the contrary, our cases have reiterated that such societies are incapable of acquiring and holding title to land. Authorities supra."

But this rule is not absolute. While this court has held that an unincorporated religious society cannot maintain an action in the nature of ejectment in the name of the society, Enterprise Lodge No. 352 v. First Baptist Church (Col.) of Evergreen, 288 Ala. 592, 264 So.2d 153, it has also held that an unincorporated religious society can maintain a bill for injunction to require respondents to remove a fence on its property and from further trespassing on church property, Vaughn v. Pansey Friendship Primitive Baptist Church, 252 Ala. 439, 41 So.2d 403; and that an incorporated church, by and through its trustees and deacons, can maintain a bill to quiet title to their church property, Hamner v. Carroll's Creek Baptist Church, 255 Ala. 277, 51 So.2d 164, Ford v. Washington, 288 Ala. 194, 259 So.2d 226. This court has also held that equity has power to compel specific performance of an agreement to convey land made to trustees of a religious society before it was incorporated, upon application of the church after it became incorporated. Gewin v. Mt. Pilgrim Baptist Church, 166 Ala. 345, 51 So. 947.

In Hundley v. Collins, 131 Ala. 234, 32 So. 575, this court said:

" * * * A church or religious society may exist for all the purposes for which it was organized independently of any incorporation of the body under the statutes of the state; and, it is a matter of common knowledge that many do exist and are never incorporated. For the promotion of religion and charity, they may subserve all the purposes of their organization, and, generally, need no incorporation except incidentally to further these objects. They do not place themselves beyond the pale of the protection of the law as to properties, for the lack of incorporation. It is the province of a court of equity to protect such organizations in what they hold, in order to sustain trusts, because of their charitable uses, which would otherwise be held void. * * *"

This court has dealt with deeds to unincorporated religious societies several times. The author of *McLean,* 254 Ala. 134, 47 So.2d 257 (1950), also authored Johnson v. Sweeney's Lane Church of God, 270 Ala. 260, 116 So.2d 899 (1959). In the latter case, Delia V. Bowen deeded property to an unincorporated religious society, but which, as here, subsequently became incorporated, and this court quoted from Gewin v. Mt. Pilgrim Baptist Church, 166 Ala. 345, 51 So. 947:

" 'The unincorporated society was without capacity to acquire or hold title. Stewart v. White, 128 Ala. 202, 30 So. 526, 55 L.R.A. 211. Nor did the conveyance to trustees—or, rather, the agreement to convey—for the unincorporated society in strictness create a charitable use. Nevertheless, the jurisdiction of the chancery court over such voluntary associations and their property is maintained in this state, independently of the English statute of charitable uses and of any prerogative power of the court, on the ground of the trust nature of the property, the charitable uses for which it is designed, and the inadequacy of legal

remedies.—Burke v. Roper, 79 Ala. 138; Williams v. Pearson, 38 Ala. 299; Carter v. Balfour['s Adm'r], 19 Ala. 814. Equity must therefore have power to compel a conveyance to the incorporated church. This will not involve the court in the impossible function of making a contract for the parties, nor require the performance of a contract differently from its agreed terms. An organization, under the statute, by the majority of a society, operates ipso facto as a transfer of the rights and interests of individual members to the corporation thereby created.—Happy v. Morton, 33 Ill. 398. The incorporated church has succeeded to all the rights of the unincorporated church. * * *' "

This court also quoted from Hope of Alabama Lodge of Odd Fellows v. Chambless, 212 Ala. 444, 103 So. 54:

" 'A court of equity treats the active members of a voluntary nonbusiness association as the owners of its properties in trust for the community interest of the unincorporated society or association. This was in effect, the result of First Nat. Bank [of Gadsden] v. Winchester, 119 Ala. 168, 172, 24 So. 351, 72 Am.St. Rep. 904, as dealing with corporate property and the stockholders' interest therein, where the corporation was in abeyance. When there is an incorporation of such society or association, participated in and authorized by a majority of its membership, the legal title passes to the corporation (Robertson v. Business Boosters' Country Club, 210 Ala. 460, 98 So. 272); such is the result as to the legal title to the community property, if incorporated by a majority of the association's members. If incorporation is participated in and authorized by less than a majority of the lodge membership, the title to said properties would not vest in the corporation, but remain in trust for the majority membership, or in abeyance for the association unincorporated. This is the theory of our unincorporated church cases. Gewin v. Mt.

[Pilgrim Baptist] Church, 166 Ala. 345, 51 So. 947, 139 Am.St.Rep. 41; Walker v. McPherson, 199 Ala. 486, 74 So. 449; Blount v. Sixteenth Street Baptist Church, 206 Ala. 423, 90 So. 602. * * *' "

Then this court wrote:

" * * * Nevertheless, equity has jurisdiction over voluntary unincorporated associations and their property in this state. If the legal title never passed out of Delia V. Bowen, in equity she held such title as trustee for The Church of God of Prichard, and when that church was incorporated, the legal title passed to the incorporated church regardless of whether it was in Delia V. Bowen or the individual members of the unincorporated church. * * * "

All the justices concurred in the opinion in *Johnson*, and three of them had participated in the *McLean* decision. So, it appears that in equity this court does allow a conveyance to an unincorporated religious society to stand where the society is later incorporated in order to secure title to the property.

We fail to see any material distinction in a grant by deed and a devise by will in an attempt to convey property to an unincorporated religious society that is later incorporated. A deed is effective upon delivery and a will speaks as of the death of the testator. But if the grantor in a deed has named an improper grantee, he can redraft his deed, but the testator cannot redraft his will. And there are numerous instances where courts have upheld devises to people not then in esse. Here, the unincorporated church was in existence, the congregation occupies a building; it owns the church property, a parsonage and a cemetery, and it is the same church, incorporated, as it was unincorporated, and still a part of the North Alabama Conference, and the pastor is appointed by the bishop. Also, it was the unquestioned intention of the testator to convey the property to his church.

In MacGregor v. Commissioner of Corporations and Taxation, 327 Mass. 484, 99 N.E.2d 468, it was said:

"Voluntary associations were not regarded at common law as legal entities and so could not as such take title to real or personal property either for their own benefit or in trust for others. Scott, Trust, § 97. The gifts, however, would not fail for want of a trustee, and any technical difficulty that might exist as to the legal title might easily be removed by the appointment of a trustee. * * *"

In Frazier v. St. Luke's Church, 147 Pa. 256, 23 A. 442, the court said:

" * * * A devise to an unincorporated association is a devise to nobody. But the devise in this instance did not fail, and why? Because it was for a charitable or religious use, and the beneficiaries were the real owners. A gift to the lame, the halt, and the blind, is not to fail in the nineteenth century because the legal title is given to a person or corporation incapable of taking it, or even forbidden by law to take it. Chancery here steps in to enforce the charity, and commits it to some one who may lawfully administer it. * * *"

In Restatement, Second, Trust, § 397, Comment f, the rule as to a devise to an unincorporated charitable association is stated as follows:

"If the owner of property devises or bequeaths it to an unincorporated charitable association, a charitable trust may be created although the purposes of the trust are not mentioned in the will. If the association is incapable of taking title to the property and administering the trust, the court will appoint a trustee to take the title and administer the trust for the purposes of the association. * * *"

In Schneider v. Kloepple, 270 Mo. 389, 193 S.W. 834, several Missouri cases are cited for the rule "since the corporate character of the devisee is not necessary to the validity of a charitable devise" made to an unincorporated religious society.

The dissenting opinion cites Trustees of the Philadelphia Baptist Association v. Hart's Executors, 4 Wheat. (U.S.) 1, 4 L. Ed. 499 (1819). That case is cited in Carter v. Balfour, 19 Ala. 814 (1851), wherein this court cited cases where land was devised to unincorporated societies, and quoted a New York case, Potter v. Chapin (6 Paige 639), where the chancellor said of 4 Wheat. 1, "I believe that it is generally admitted that the decision in that case was wrong." Later in the opinion, Coleman, J., speaking for all the court except Chilton, J., who did not participate, stated: "I consider the above case from 4 Wheat. as partially, if not altogether overruled by the same court"; and he cites cases of the U.S. Supreme Court to support that statement. In 1882, in Russell v. Allen, 107 U.S. 163, 2 S.Ct. 327, 27 L.Ed. 397, the U.S. Supreme Court stated that the case of Baptist Association v. Hart, 4 Wheat. 1, "was decided upon an *imperfect* survey of the early English authorities, and upon the theory that the English law of charitable uses, which, it was admitted, would sustain the bequest, had its origin in the statute of Elizabeth, which had been repealed in Virginia. *That theory has since, upon a more thorough examination of the precedents, been clearly shown to be erroneous.*" (Emphasis Supplied.)

We think it appropriate to note that it is general knowledge that in the organization of the United Methodist Church, title to real property is not in the local churches but in the respective Annual Conferences. In 1 Page on Wills, § 17.14, at 835, the author says:

"A devise to an unincorporated association, which is an agency of an incorporated church, is treated as a devise to the church in trust for such agency. * * *"

The cases cited in support of the rule so hold. Had proof been made that the An-

nual Conference was incorporated or that it held title to the property of the local church, this would have been an additional reason for affirming the decree of the trial court.

Applying the rule of our cases heretofore cited, we hold (paraphrasing the language of *Johnson*, 270 Ala. 260, 116 So.2d 899, and authorities cited therein), that the legal title to the property passed under the will to the incorporated church regardless of whether it was held in trust by the trustees of the church, individual members of the unincorporated church, or the next of kin of the testator, and passed to the church when it was incorporated.

Affirmed.

BLOODWORTH, MADDOX, McCALL and JONES, JJ., concur.

HEFLIN, C. J., concurs specially.

COLEMAN, HARWOOD and FAULK-NER, JJ., dissent.

HEFLIN, Chief Justice (concurring in result):

I concur that this case. should be affirmed, but for different reasons.

Appellant in this case relies on Title 61, Sections 4, 5, Code of Alabama, 1940, as amended (Recompiled 1958) and the long standing common law rule that an unincorporated association cannot hold title to real property, e. g., Enterprise Lodge No. 352 v. First Baptist Church (Col.) of Evergreen, 288 Ala. 592, 264 So.2d 153 (1972). Section 4 provides as follows:

"A devise of lands, tenements, or hereditaments may be made to any person or corporation capable by law of holding real estate."

Section 5 states:

"Any estate or interest in real property, devised to a person or corporation inca-

pable of taking, descends as in case of intestacy . . ."

This court has gone so far as to hold that because of the common law disability of an unincorporated association to hold title to real property, a devise to such an association is *void*. McLean v. Church of God, 254 Ala. 134, 47 So.2d 257 (1950).

The hub of Appellant's argument then is the above mentioned common law rule. Although this court has repeatedly intoned the rule over the years, little discussion of the reasons for maintaining such a rule can be found. Indeed, because of the realities of modern day conditions the courts of this country, including this court, have used many devices to avoid the operation of this ancient rule. For example, the pro-.hibition is said to apply only to real and not personal property. See McLean v. Church of God, supra. And, in addition, this court has held that an unincorporated society may hold equitable title to real property under certain circumstances. See, e. g., Johnson v. Sweeney's Lane Church of God, 270 Ala. 260, 116 So.2d 899 (1960).

The majority opinion in this case would carve out still another exception by permitting a devise of real property to be sustained under the theory that a charitable use should not fail for want of a trustee.

These inroads into the old rule are the result of a recognition by members of this court of the social necessity for some form of collective ownership by unicorporated organizations. The overall problem is well summarized by Professor Powell:

"Some courts persist in the viewpoint that an unincorporated group is not an entity and hence that a deed to such a group, in its collective name, is a nullity. Like holdings have been made concerning wills which devise land to a group as such. An occasional statute retains this unrealistic attitude.

"The unrealism of the above position stems from the facts that groups do function widely and variously in present-

day society and must be provided some means for collective acquisition, utilization, and transfer of land. Joint tenancies or tenancies in common created in those persons who are members of the group at the date of the deed or will making no provision for future changes in the group's membership preclude anything like majority decisions as to the group's policies and actions, and give to any dissentient member an unreasonable veto power because of his ability to demand partition. Whatever phraseology or concept is utilized by the law to meet the need for 'collective ownership,' the power of a dissentient individual or minority to block the group's handling of its assets must be kept slight.

"The social necessity for a permissible form of collective ownership by unincorporated associations is most frequently met by allowing the officers of any such group to take title as trustees for the group. When the group has a charitable objective, this position is merely an application of the age-old equitable idea that a gift to charity will not be permitted to fail because of a failure effectively to designate a trustee, and its corollary, that when the basic fact of an intent to give to charity is found, equity will appoint a competent trustee to administer the property. This solution has been applied in many states to unincorporated churches of many different denominations, and in one state to an unincorporated group of Chinese organizing a Chinese Joss House. It also has been applied to the auxiliary groups furthering religious work, and to the Salvation Army. It has found embodiment in the statutes of many states. When, however, the group does not have a charitable objective, the anological extension of the trustee device is sometimes refused, but has been made in a considerable number of cases.

"In some jurisdictions the pendulum has swung even further from the early common-law rule, and unincorporated associations are permitted to acquire land interests in the group name, without mention of trustees as the mediators of ownership. Sometimes this holding is made without explanation, sometimes it is based on statutory provisions which permit the officers of such an unincorporated association to constitute 'a body corporate,' and sometimes it is the product of statutes which explicitly · permit such an association to acquire land interests in its group name." R. Powell, The Law of Real Property § 131, at 510–516 (1969).

Note also that the legislature has moved to alleviate the unreality of the common law rule by enacting a simplified scheme whereby churches, educational or benevolent societies, etc. may incorporate, and upon completion of this incorporation, the association may "acquire, hold, administer, distribute or dispose of real or personal property . . . " See Title 10, Sections 124–132 Code of Alabama 1940, as amended (Recompiled 1958). Regardless of this simplified procedure, there remain in this state a large number of unincorporated associations, especially religious groups, which, for reasons of their own, have elected not to incorporate. Thus the problem of how best to fashion a rule of law which will fulfill the need for a form of collective ownership by unicorporated associations should be considered.

I feel that the ends of justice will best be served by a rule which permits unincorporated associations to acquire, hold and transfer property in their own name. I would hold that an unincorporated religious society does have the capacity to acquire real property by devise, and the instant case is due to be affirmed. Thus I would overrule McLean v. Church of God, supra, and other similar holdings.

It is realized that the promulgation of a new rule often leaves many questions unanswered. But there is a core of decisions in this state and decisions from other states which will serve as a basis for re-

solving problems as they arise. Perhaps the foremost problem likely to arise is how the rights of the church members will be protected in case of a schism or in case it becomes necessary or expedient to dispose of the property held.

As a starting point, the court has repeatedly held that while the powers of courts of this state may not be invoked in purely ecclesiastical matters, the courts of this state do have jurisdiction to act in church matters involving civil and property rights. See, e. g. Board of Incorporators of African Methodist Episcopal Church v. Gaston, D.C., 343 F.Supp. 823 (1972); Williams v. Jones, 258 Ala. 59, 61 So.2d 101 (1952); United Baptist Church of Primitive Faith v. Gautney, 250 Ala. 216, 34 So.2d 1 (1948). Furthermore, the conveyance of property held by trustees of an unincorporated association has long been under the watchful eye of the courts of equity, since as trustees of a passive trust, the trustees have no power to convey the property. Street v. Pitts, 238 Ala. 531, 192 So. 258 (1939). Thus it seems clear that the courts of this state have jurisdiction to settle controversies involving the conveyancing of property to and from unincorporated associations.

Although the court may not have the ability to predict every conceivable variation which may arise under the new rule, there are some generally established principles which will provide guidance.

In the usual situation, the persons who constitute an unincorporated association will have made some sort of agreement or will have established a constitution and by-laws for the government of the association. Unless justice and equity dictate otherwise, the actions of the duly constituted authorities, acting in accordance with its rules and regulations or under a mandate of the majority should be binding on the association. Naturally a corollary to this rule would be that if the constituted authorities act outside the scope of the con-ferred authority, the acts would not bind the association. See Pallilla v. Galilee Baptist Church, 215 Ala. 667, 112 So. 134 (1927).

In the event the association has no written constitution or by-laws, absent a valid reason for not so doing, the court likely would adhere to the cases which hold that in democratic church organizations, the majority controls as a rule. See Gewin v. Mt. Pilgrim Baptist Church, 166 Ala. 345, 51 So. 947 (1910); Harris v. Cosby, 173 Ala. 81, 55 So. 231 (1911); Guin v. Johnson, 230 Ala. 427, 161 So. 810 (1935).

In the event of a schism, the law extant in this state both as to incorporated and unincorporated associations is essentially the same. The principle applied is well stated in Guin v. Johnson, supra:

"The power and duty of the state to protect religious bodies in their property rights are beyond question. These temporal facilities are in aid of, if not essential, to the full enjoyment of religious freedom—to congregate and worship, teach, preach, and generally promote the spiritual ends for which churches exist.

"This puts upon the courts the determination of the very delicate question as to which of two contending groups is entitled to the possession and control of the church property. Unless there is shown a clear diversion of the property from the religious uses to which it was dedicated, the majority must rule in a democratic religious body. Harris et al v. Cosby et al., 173 Ala. 81, 94, 55 So. 231; Morgan et al. v. Gabard et al., 176 Ala. 568, 58 So. 902; Gewin et al. v. Mt. Pilgrim Baptist Church, 166 Ala. 345, 51 So. 947, 139 Am.St.Rep. 41; Christian Church of Huntsville et al. v. Sommer et al., 149 Ala. 145, 43 So. 8, 8 L.R.A.(N. S.) 1031, 123 Am.St.Rep. 27; Barton et al. v. Fitzpatrick et al., 187 Ala. 273, 65 So. 390; Stewart et al. v. White et al., 128 Ala. 202, 30 So. 526, 55 L.R.A. 211; Manning et al. v. Yeager et al., 201 Ala.

599, 79 So. 19; Id., 203 Ala. 185, 82 So. 435; Blount et al. v. Sixteenth St. Baptist Church, 206, Ala. 423, 90 So. 602; 54 C.J. 71."

Thus the court has held that when a religious society divides into two groups, one of which radically departs from fundamental ecclesiastical usages and principles which were accepted before the dispute arose, ordinary principles of majority rule do not apply, and the group adhering to such usages and principles is entitled to the church property. Holt v. Scott, 252 Ala. 579, 42 So.2d 258 (1949). Although these rules are rooted in trust principles there appears to be no good reason why such rules should not be applied by a court of equity in a non-trust situation. Indeed in cases involving incorporated churches, the courts of equity of this state have not hesitated to assume jurisdiction, even though any passive trust would have been executed upon incorporation of the association. See Williams v. Jones, supra.

As a final note, it should be pointed out that authority also exists to resolve problems which arise in unincorporated associations which are less democratically organized that the "majority rule" associations mentioned above. In Davidson v. Church of Christ, 245 Ala. 203, 16 So.2d 179 (1944), the appellants insisted that since the Church of Christ was congregational in its nature and creation, with no superior or directing power other than that found in the government of the church by its membership, express authority of the congregation, acting as such, is necessary to institute a suit in the church's name. The evidence was without conflict that the church in question has no written creed or discipline, but that the elders had been chosen by the customary manner of the church:

> "That is to say, the members of the church do not 'vote,' as the term is ordinarily used, but instead discuss among themselves the qualifications of a member to serve as an elder. An announcement is then made to the congregation that a certain named member is an elder,

and if there is no objection voiced, he then becomes an elder."

The court went on to hold that there was sufficient evidence to support the church's insistence that the elders have authority to govern and control the temporal affairs of the church and the church property, and held that those who unite themselves to such an organization do so with an implied consent to that form of government and must submit to it.

In summary then, it appears that there is authority to guide the court in resolving problems of conveyancing to and from unincorporated associations.

Furthermore, it would seem that no private interests are protected and no compelling public policy is served by requiring that unincorporated associations hold real property through some trust arrangement. See generally, Comment, The Law of Trusts in Alabama, 25 Ala.L.Rev. 467, 492–59 (1973). On the other hand, the rule herein suggested would have the effect of fulfilling the reasonable intent and expectations of the average layman in this state when he attempts to transfer property, whether by deed or by will, to some unincorporated church group. Also, the rule should have a salutary effect on a long-recognized problem of clouds placed on titles to land because of conveyances of real property from unincorporated religious societies. See Worthy, The Acquisition and Alienation of Real Property By Religious Societies in Alabama, 15 Ala. Law 410 (1954).

Furthermore, the legislature has recognized that unincorporated associations are sufficiently recognizable entities so that they may sue and be sued in their own name. Title 7, Section 142–145, Code of Alabama 1940, as amended (Recompiled 1958). And note particularly Section 145 which states:

> "Where a judgment in such action is rendered in favor of the plaintiff against such organization or association *the property of such organization or associa-*

*tion shall be liable to the satisfaction of such judgment."* (Emphasis added)

In conclusion, a comment by Professor Powell is again in order:

"The extent of legal recognition of capacity does and should differ according to the nature of the group in question. When a group activity (1) serves a desirable social end, and (2) is facilitated by the possession of land rights, the recognition of the capacity of such group to acquire, to hold, and to transfer interests in land becomes socially requisite. As either of those factors shades down, the necessity diminishes. Hence, it is to be expected that the law will differentiate between unincorporated associations on many bases, treating differently those existing for the economic profit of the constituents and those functioning for the promotion of religious, fraternal, social, and more transient objectives." R. Powell, supra, § 130, at 506.

Thus, even though I would hold that an unincorporated religious association may take by devise, I would reserve judgment as to the capacity of other types of unincorporated associations until the arguments pro and con are heard.

FAULKNER, Justice (dissenting).

What the majority has done in this case is to call an end sweep when the game plan calls for a play up the middle. Whether an unincorporated association can hold title to real estate is still unsettled. A rose by any other name is still a rose. If the question of how a conveyance can be made from an unincorporated association were answered by the concurring opinion of the Chief Justice, I would be inclined to vote with him. But, that question is not answered. In most jurisdictions which permit unincorporated associations to hold title to real property, the title is vested in the members thereof jointly. Under that theory in our State each and every member and his or her spouse would have to join in the execution of a deed or mortgage. But, what happens when a member leaves or dies? Do his or her heirs and next of kin have to be tracked down to get their signatures? And, suppose a member flatly refused to sign, could good and merchantable title be conveyed by the remaining members?

The majority holding that "the legal title to the property passed under the will to the incorporated church regardless of whether it was held in trust by the trustees of the church, individual members of the unincorporated church, or the next of kin of the testator, and passed to the church when it was incorporated" is reminiscent of two bird hunters. One had a steady aim, fired on a flushed covey and missed. The other was shaky with his gun, which wavered from side to side, up and down, and around in circles when he pointed it to a flushed covey. He fired and killed a bird. The one with the steady aim remarked to his friend, "You ought to have got one—you shot everywhere." This story is told in good humor and not intended to reflect on the sincerity and integrity of the members of the majority.

Whether an unincorporated association which was subsequently incorporated was then capable of holding title to real estate was ruled upon by the Supreme Court of the United States in Trustees of the Philadelphia Baptist Association v. Hart's Executors, 4 Wheat. (U.S.) 1, 4 L.Ed. 499 (1819). The Court, by an opinion delivered by Chief Justice Marshall, held that the Baptist Association, not being incorporated at the testator's death, could not take title to the property given and bequeathed to it under the decedent's will.

Under the facts in this case the wife of Whitaker, upon his death, became the life tenant with remainder over to the Equality Methodist Church if it could take. As the life tenant she became the trustee for the remainderman. Amos v. Toolen, 232 Ala. 587, 168 So. 687 (1936); Durden v. Neighbors, 232 Ala. 496, 168 So. 887 (1936);

**88**

Abney v. Abney, 182 Ala. 213, 62 So. 64 (1913). And, as trustee for the remainder-man, the life tenant could not injure or dispose of the property to the injury of the remainderman. Durden v. Neighbors, supra; *Abney*, supra. By no act of the life tenant can the title of the remainderman be effected or destroyed. Hall v. Condon, 164 Ala. 393, 51 So. 20 (1909); McLeod v. Bishop, 110 Ala. 640, 20 So. 130 (1895).

The will read "in fee simple forever". Even though a life tenant holds in trust for the remainderman, there must be a remainderman capable of taking title to the real estate. Under Title 61, § 4, Code of Alabama 1940, Recompiled 1958, a devise of lands may be made to any *person* or *corporation* capable by law of holding real estate. Section 5 of this title provides that any interest in real estate devised to a person or corporation incapable of taking, descends as in case of intestacy. A will speaks from death and without consequences from subsequent events. Blakeney v. DuBose, 167 Ala. 627, 52 So. 746 (1910). Although the intent of the testator must be as fully carried out as legally possible, his will must meet the requirements of the law. Sanford v. Alabama Power Company, 256 Ala. 280, 54 So.2d 562 (1951).

The majority does not answer the question as to ejectment by an unincorporated association. See Arnold v. Methodist Episcopal Church, 281 Ala. 297, 202 So.2d 83 (1967); Vaughn v. Pansey Friendship Primitive Baptist Church, 252 Ala. 439, 41 So.2d 403 (1949). If one has a piece of cake, he ought to have the right to eat it.

In answer to question of "reserving judgment as to other types of unincorporated associations" mentioned by the concurring opinion, I see no reason in the eyes of the law why they should be treated any differently from a religious society, so long as it is for a legal purpose.

I respectfully dissent.

HARWOOD, J., concurs in the result.